## Morris Water Company, Appellant, *v.* Public Service Commission.

Argued April 23, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Douglass D. Storey,* with him *John B. Pearson* and *Hause, Evans, Storey & Lick,* for appellant.

*Samuel Graff Miller,* with him *John C. Kelley,* and *Richard J. Beamish,* for appellee.

418

Opinion by Keller, P. J., July 18, 1935:

The order appealed from is, on its face, so manifestly unreasonable as not to need extended discussion in disposing of the matter.

(1) It requires a small water company, with a capital stock of $10,000, and a mortgage indebtedness of $12,000, which buys all its water from another water company—it has no water supply of its own—and furnishes water to 270 consumers in Hawk's Run, a small unincorporated town or village in Morris Township, Clearfield County, and to 79 consumers in the southern edge of Morrisdale, another village, or unincorporated town, in said township, making 349 consumers in all, with a gross annual revenue of $4,600, to expend $50,000 in enlarging its mains and constructing new mains for three and a half miles, so as to furnish water to the rest of Morrisdale and to two other smaller villages in said township (Oak Grove and Allport), having altogether 221 families as potential additional consumers. These places are all mining villages, developed in connection with the operation of bituminous coal mines, which at present output will be exhausted as operating mines in from ten to twenty-five years; villages which the commission finds are without "prospects for much growth and increase." The population of the township decreased from 4,891 to 3,713, or 24%, in the decade between 1920 and 1930. The commission made no inquiry into or finding as to how and where a company, so small in size and resources, was to obtain such a comparatively large amount of money for this extension, or more properly speaking, this enlargement and expansion—five times its capital stock, four and a sixth times its bonded indebtedness, and two and a quarter times its total invested capital—; it seemed to consider that its duty in the matter was confined to a determination,—erroneous, as we shall later show,—that sufficient new customers could be obtained to give appellant an additional annual revenue of $5,200, apportioned

$2,200 for expenses of operation and $3,000 for interest on additional investment; and, with that thought in view made its order conditional on the complainants presenting to the water company "written applications for service at the rates suggested therein,[1] or at any other reasonable and proper metered rates, from consumers in the villages of Morrisdale, Oak Grove and Allport, including the seventy-nine (79) now served by gravity in Morrisdale, sufficient to produce an annual revenue of not less than $5,200 per year at such rates, the applications being accompanied by the payment in advance of the minimum bill for service for one year."

But where the expenditure for a proposed extension or expansion is so great, in comparison with the present size and resources of the company, as to be two and a quarter times its present total invested capital, including bonds and stock, and to increase the indebtedness—if secured by borrowing—to over six times the capital stock, before such an order can reasonably and legally be made the commission should examine into the circumstances and disclose some practicable and feasible way for the company to secure such a comparatively large amount of money. The order of the commission is, of itself, no Aladdin's lamp, a rub of

---

[1] *Meter Rates*

Schedule of minimum charges, entitling the consumer to 3,000 gallons of water per quarter:

| For service through | 5/8" meter | $ 4.00 per quarter |
| " " " | 3/4" meter | 6.00 per quarter |
| " " " | 1" meter | 9.00 per quarter |
| " " " | 1½" meter | 20.00 per quarter |
| " " " | 2" meter | 40.00 per quarter |
| " " " | 3" meter | 65.00 per quarter |

Schedule of consumption charges in addition to minimum charge for consumption in excess of 3,000 gallons per quarter:

| Next 7,000 gallons per quarter | $.35 per 1,000 gallons |
| Next 290,000 gallons per quarter | .25 per 1,000 gallons |
| Over 300,000 gallons per quarter | .15 per 1,000 gallons |

*Fire Protection Rates*

Each fire hydrant (flat rate) ........ $12.50 per quarter

which will supply such disproportionately extensive demands for capital; while the failure to obey the order would subject the company to unnecessary and unjust fines and penalties (Public Service Company Act, Art. VI; sections 33, 34, 35, 36) which might well bankrupt it and seriously affect its ability to supply the communities it is already serving. It is, of course, desirable, as far as reasonably possible, to supply water to such villages, or parts of them, as are not now in the enjoyment of a central water supply, but the fulfillment of such a laudable end must be within reasonable and practicable limits, and a desire to help these villages must not be so pursued as to bankrupt the water company or injure other villages, more conveniently located for the supply of water; nor can the impossible be ordered, in the light of present day conditions and circumstances. Commissions, as well as courts, must take notice of economic conditions, affecting the ability of a public service company to carry out the orders of the commission: A. T. & S. F. Ry. Co. v. U. S. 284 U. S. 248.

We pointed out in Wyoming Valley Water Supply Co. v. P. S. C., 104 Pa. Superior Ct. 432, 159 A. 340, that the fact that a water company secures a charter to supply water to the public in a certain township, does not ordinarily impose on it the obligation to supply water to all the public in the township. "The corporation secures no exclusive right to serve the public in the whole township—a half dozen different corporations may be chartered to serve half a dozen different communities in one township—and it assumes no corresponding absolute duty to serve the public all over the township. It is unlike a water company chartered to serve a borough or a city" (p. 436). Morris Township has approximately twenty square miles of territory. It is unreasonable to suppose that in incorporating a water company with $10,000 capital stock it was intended that it should be obliged to supply water to the public in

every hamlet, village or community within that twenty square miles. The charter gave it no monopoly and imposes no corresponding obligation.

(2) Furthermore, the commission's calculation as to the probability of the company's receiving from its new customers a sufficient amount to meet its increased annual expenses of $5,200,—if it was fortunate enough to borrow $50,000 on second mortgage at 6% interest, (out of which must be deducted personal property tax),—is erroneous. It has, throughout its report, confused the terms 'maximum' and 'minimum.' When one hundred and fifty-three prospective customers signed an application agreeing to pay a water rate 'not in excess of $16 a year,' they agreed to pay a 'maximum' of $16 a year, not a 'minimum.' The school district agreed to pay $350 annually for water furnished to the three schools, and $50 annually for a fire hydrant. Deducting this sum, $400, from $5,200, leaves $4,800, which at a maximum of $16 a year would require 300 additional consumers in the extended districts. There are in Morrisdale 121 families not now being served with water; in Oak Grove there are 40 families; in Allport 60 families. If every family takes water—and this is, admittedly, not probable—there are only 221 of them, which at $16 a year, amounts to $3,536; adding to this $316 additional to be collected from the 79 present customers in Morrisdale, leaves $948 to be collected from fire hydrants—(12 suggested at $50 each)—and other sources, as to which there is no certainty. The commission unfairly allocates all of the revenue to be derived from these 79 present consumers in Morrisdale at $16 per year to the new extension or improvement, overlooking that the company is now receiving $948 a year from these customers, and to apply all of their water rents to the new project will deprive the company of $948 revenue now used and needed for its present operations and cause a corresponding deficit. On the other hand, if only 153 new customers are obtained, the revenue

from that at $16 a year, $2,448, plus $316 additional rents from the 79 present customers in Morrisdale, leaves $2,036 which must be collected from fire hydrants and other uncertain sources,—an impossible task. Without passing upon any more of the alleged errors of the commission pointed out by the appellant in its brief, the calculation in the report does not work out. Besides, there is no assurance that 3,000 gallons of water a quarter will fill the requirements of all householders, and the applicants for water have limited their payments for water rates to a maximum of $16 a year. The present consumers are using a much larger quantity.

For the above reasons we find the order to be unreasonable and contrary to law in so far as it requires appellant to extend its lines three and a half miles at a cost of $50,000. No appeal has been taken by appellant from so much of the order as directs the improvement of the company's service to its present customers in Morrisdale, and we do not disturb that.

To the extent above indicated the order is reversed.