## Altoona, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued October 5, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Paul E. Beaver,* City Solicitor, for appellant.

*Jack F. Aschinger,* with him *John W. Mentzer* and *Charles E. Thomas,* for Pennsylvania Public Utility Commission, appellee.

OPINION BY HIRT, J., January 12, 1951:

The City of Altoona is served by a municipally owned and operated water system. Part of the system was originally acquired by purchase from privately owned water companies. One of these companies, referred to as the Allegheny System, had operated in Logan Township and the existing service was continued by the city after purchasing that system in 1930. Logan Township has a wide adjoining area almost completely surrounding the City of Altoona. The city, at the time when the present complaints were filed, was furnishing public water service in parts of Logan Township. In the present proceeding eight owners of real estate fronting either on Twenty-seventh or Twenty-eighth Avenues between Fifteenth and Sixteenth Streets, sought extensions of the public water supply by the city for the service of their properties. This area adjoins the city but is wholly within Logan Township. The existing municipal water lines end at Twenty-sixth [Avenue] and at Fifteenth Street which mark the city lines abutting the township area here involved.

When the requests of the owners of the land were refused they filed complaints with the Public Utility Commission alleging that the city had discriminated against them unduly and unreasonably by refusing them water service. The Commission, after hearing and rehearing, concluded that "an extension of about 360 feet of 2-inch pipe on 27th Avenue at a probable installed cost of about $1,000 or less, would be adequate for residential service to the properties of complainants and others in that block between 15th and 16th streets, where there are 14 fifty-foot abutting lots or the equivalent thereof; and that a similar extension on 28th Avenue would be adequate for similar service in that block of 28th Avenue where there are similar abutting lots or equivalent." The Commission, in disposing of the complaints, suggested that the property

owners share in the cost on a foot front basis subject to a refund after a period of years, and it was ordered nisi: "That City of Altoona extend its water facilities and service to the properties of complainants and others abutting on 27th and (or) 28th avenues between 15th and 16th streets in Logan Township, Blair County, either in accordance with the basis suggested in the foregoing for consideration of the parties or under any reasonable arrangements as may be mutually agreed." In the absence of any agreement between the parties and the city, this became the final order from which the city has appealed.

The municipal water system, insofar as it provides service within the city, is subject to regulation by the Court of Common Pleas of the County. Act of June 16, 1836, P. L. 784. Under §401 of Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1171, however, it is provided that: "Any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility." The same section of the Code provides: "Subject to the provisions of this act and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service." Seeking to restrict public water service for the future to facilities then existing, the city enacted an ordinance on March 11, 1947, providing, in effect, that thereafter no service would be extended beyond the city limits to residents of adjoining townships except "where frontage abuts existing water-mains". This ordinance is wholly ineffective to oust the jurisdiction of the Public Utility Commission under the 1937 Act, supra.

The Commission had jurisdiction of the subject matter of the present complaint. In addition to continuing to serve the former patrons of the Allegheny System the city had extended its water service into Logan Township. The answer of the city to the present complaint admits that other residents in many other parts of Logan Township receive water service from the city, with this qualification: "Some non-residents of the City residing in townships adjoining the said City have been furnished water prior to March 11, 1947, (such as users of the Allegheny Water System purchased by the [City]; [or] non residents whose properties abut existing City Water Mains". And the testimony shows that two properties on Twenty-ninth Avenue between Fifteenth and Sixteenth Streets, in the neighborhood of the area here involved, have been supplied with city water service ever since 1934.

The City of Altoona extended the service of its municipal water works beyond its corporate limits on statutory authority. The Third Class City Law, the Act of March 10, 1937, P. L. 57, §2, 53 PS §12198-3540 in continuing like authority granted in prior legislation provides that a city having title to its waterworks "may extend" the service of water supply beyond the bounds of the city. And when once extended the service beyond the corporate limits of the city are made subject to regulation and control by the Commission "as to service and extension" by §401 of The Public Utility Law above quoted. A city alone can decide whether it will extend its service beyond its corporate limits. But although the city could have refused to accept new customers beyond its limits in the first instance, yet so long as the privilege was granted to some, its refusal to serve others who were similarly situated was subject to review by the Commission. Cf. *Reigle v. Smith et al.*, 287 Pa. 30, 35, 134 A. 380. Water service provided by the municipality in the township

is under the control of the Commission, not only as to rates (*Shirk v. Lancaster City*, 313 Pa. 158, 166, 169 A. 557; *Ambridge Boro v. Pa. P. U. C.*, 137 Pa. Superior Ct. 50, 8 A. 2d 429) but as to extensions of existing service outside the city limits under §401 of the Public Utility Code.

In our view the jurisdiction of the Commission in this instance is not affected by our decision in *Johnstown Water Co. v. P. S. C.*, 107 Pa. Superior Ct. 540, 164 A. 101, on which the city strongly relies. The water company in that case was a private corporation chartered in 1866 to supply water to five boroughs "and vicinity" including the then Borough of Johnstown. In 1889 the five boroughs "together with large contiguous territory to the respective boroughs, were incorporated into the city of Johnstown." It had been determined that the entire territory comprising the five boroughs *and vicinity* as contemplated by the charter of the water company were wholly within the limits of the City of Johnstown when incorporated into the city in 1889. *Blauch v. Johnstown Water Co.*, 247 Pa. 71, 93 A. 169. The water company subsequently supplied water to some persons outside the limits of Johnstown. In the above case it was obvious that the voluntary service outside the city limits was not within the company's charter territory. And we there held that the Public Service Commission did not have power to order additional extensions of the service, beyond the bounds of the city, on the principle that a privately owned water company cannot be compelled to furnish service in a district not contemplated by its charter, and further that the voluntary extension by the company of its facilities was but incidental to its main purpose and did not enlarge its charter territory. In the instant case previous extensions of service were made by the city on statutory authority.

The legislative grant of authority to the Commission clearly is sufficient to give it the power to regulate extension of service in the area in question. The power however is not limitless but in its exercise must stand the test of what is reasonable under all of the circumstances. Regardless of charter privileges enjoyed by the city or rights conferred on it by the legislature, there is no obligation to supply water to everyone in the township. *Morris Water Co. v. P. S. C.*, 118 Pa. Superior Ct. 416, 180 A. 72. Cf. *United Nat. Gas Co. v. Pa. P. U. C.*, 153 Pa. Superior Ct. 252, 33 A. 2d 752. The power lodged in the Commission to order extensions into Logan Township is one to be exercised with great discretion. Almost the whole of Altoona is surrounded by Logan Township and obviously, extensions from time to time of existing service to residents of the township cannot be ordered without limit. The burden on the city cannot be unreasonably increased to provide that service. In the *Morris Water Co.* case, supra, a part of the order of the Commission directing the water company to extend its lines three and one-half miles at a cost of $50,000 was reversed because unreasonable and therefore contrary to law. In the *United Nat. Gas Co.* case, supra, orders of the Commission directing the furnishing of service outside the distribution system were reversed because the required service would be unprofitable and therefore unreasonable. Not only is the cost of extending the present mains, in relation to returns in rates on the investment, involved in the instant case, but other factors as well, including the adequacy of water supply available to the city and the probable necessity for further extensions of service into the township to others similarly situated to escape the charge of discrimination.

While the Commission has the power to order an extension of city water service to the area in question, the order in this proceeding does not meet the test of

reasonableness as to the means and method for providing that service. It is probable that 2-inch extensions will supply the present needs of the complainants but it may be questioned that 2-inch pipes will be adequate for the water supply of all property within the area when improved in the future. And undoubtedly in the event of the extension of water service further into the township which may be made necessary by additional annexation of township land by the city, or otherwise, the 2-inch pipes would have to be replaced by mains of adequate size under standard engineering practices. There is no evidence in this record as to the adequacy or cost of the extensions of the kind ordered by the Commission. The "probable installed cost" was estimated by the Commission at about $1,000 without supporting evidence. On that ground alone the order must be set aside. *Shenandoah Suburban Bus Lines, Inc., Case,* 158 Pa. Superior Ct. 638, 46 A. 2d 26. The city's answer estimates that the cost of the necessary installation to furnish water to complainants would approximate $3,934. The testimony, however, as to necessary installation costs was supplied by the city on rehearing. That testimony is to the effect that only six-inch mains will meet minimum requirements and the lowest cost of such mains was estimated at about $11,500. This estimated cost of providing the proper means of service may be grossly excessive. But the city will be entitled to a reasonable return on whatever expenditure may ultimately be ordered by the Commission, based upon substantial evidence with rational probative force. On this phase of the case it should be noted that a municipal water company may serve residents within the city at cost, but is entitled to a profit on service in territory outside its boundaries. *Ambridge Boro v. P. U. C.,* supra. The complainants in this case will not necessarily be obliged to bear the entire cost of extensions of proper mains for service to their properties,

254

but they may be required to pay the city a reasonably profitable return on the investment involved. It is not unusual for a municipality under such circumstances to require security assuring an adequate return until such time as additional users connecting with the mains make the extension self-supporting at rates, as fixed by the Commission, or by agreement by the parties.

The order is reversed; the complaint is referred back to the Commission for further hearing and disposition in accordance with this opinion.