## Durham Terrace, Inc., v. Hellertown Borough Authority

232

*Daniel L. McCarthy,* and *Justin Kevin McCarthy,* for plaintiff.

*McFadden, Riskin, McCarthy and Holland,* for defendant.

BARTHOLD, P. J., March 4, 1957.—Plaintiff, Durham Terrace, Inc., filed a complaint in equity against defendant, Hellertown Borough Authority, claiming equitable relief in the nature of an accounting of moneys received by defendant-authority for supplying water to plaintiff's housing development and demanding payment of income in excess of operating costs and

payment of $29,867.84, the amount allegedly spent by plaintiff for the installation of water mains.

Defendant-authority answered the complaint on the merits admitting most of the allegations of fact insofar as relevant to the cause at issue. Thereafter the case was tried in equity and at the end of plaintiff's presentation of its case as to liability defendant-authority moved for a nonsuit or dismissal of the bill.

Plaintiff constructed 154 houses on a tract of land in the Borough of Hellertown known as the Rentzheimer farm. The houses were constructed between the years 1951 and 1954. They were sold and financed with the aid of the Veterans' Administration Mortgage Guarantees. From time to time commencing December 27, 1950, plaintiff's predecessor in title and plaintiff requested defendant-authority to lay water mains and supply water to all occupants of the dwelling units constructed by plaintiff. Defendant-authority agreed to supply water but only on condition that plaintiff at its own expense construct and install all water mains in all streets in the development, make all connections from the mains in the bed of each street to a point 12 inches inside the curb line and install an undetermined number of fire hydrants. From the inception of the negotiations between the parties, defendant-authority insisted that plaintiff pay for the installation of the mains because the authority was not in a position to finance such a large-scale project. Plaintiff thereafter installed the required mains, house connections and fire hydrants at an alleged cost to plaintiff of $29,-867.84. Upon completion of the water distribution system by plaintiff, defendant-authority began to supply water to all occupants of the dwelling units constructed by plaintiff and charged and collected the usual metered rates.

Plaintiff instituted the present action in equity on February 26, 1955, more than three years after de-

fendant-authority had approved plaintiff's plans for the installation and approximately two years after it had accepted the terms imposed by defendant-authority.

The minutes of defendant-authority reveal the following:

On December 27, 1950, Mr. Peck, an officer of Guerber Associates "advised the Authority his firm had an option to purchase the Rentzheimer Farm and contemplated the building of several hundred homes for which they required water. Mr. Peck inquired whether water was available and if the Authority would install the necessary water mains . . . and what portion of the expense the Authority would assume. . . . After some further discussion it was agreed between the parties that the Authority construct, at its own expense, additional water storage facilities to furnish water to the proposed building project and *that the Guerber Associate, Inc., furnish and install, at its expense, all water mains, valves and fire hydrants and connections,* said water main installation to be done by a reputable contractor, satisfactory to the Authority, and according to Authority standards and supervision."

On February 12, 1951, "Chairman Dimmick reported that he had a call from Mr. Peck of the Guerber Associates about serving water to the proposed development on the Wm. Rentzheimer tract. *Mr. Dimmick informed him if they desired water they would be required to install the water mains at their expense.*"

On September 17, 1951, "Mr. Irwin Sanders and Attorney Cohn came before the Board relative to the water main situation on Durham Terrace. . . . Mr. Sanders stated, that all he asked, if he was required to install the mains, that he be refunded a portion of his investment, out of revenues, for several years. He

was informed by the Board that his request was not unreasonable, and *if the Authority was in a financial position to do so, would possibly come to some understanding along these lines, but, all the revenues estimated to be gotten from the Durham Terrace development and any additional revenues from homes being built throughout the town is required to finance the construction of an additional storage dam, and that no money was available for the installation of water mains;* that the Authority so informed Guerber Associates in their original request for water in this same development."

The board took the following action: "It was moved by Keiper, seconded by Unangst, that, *under the present conditions the Authority is unable to change its former postion on financing the installation of water mains on Durham Terrace, Inc., or any part thereof—* motion carried."

On September 26, 1951, "a Special Meeting of the Hellertown Borough Authority was held in the office of the Authority. . . . The Chairman stated that this meeting was called to afford Mr. Sanders of Durham Terrace, Inc., another opportunity to present his side of the water situation on their development." After Mr. Sanders presented his views, the following action was taken: *"The Board not in a position to make any concessions, the meeting adjourned."* (Italics supplied.)

On October 8, 1951, "Mr. Irwin Sanders came before the Board and presented a revised plan for the installation of water mains, valves and fire hydrants in the Durham Terrace Tract; he requested permission to install 4″ mains at various locations, also changes in location of fire hydrants. The Board informed him that they would study his plan and inform him of their decision later."

On October 10, 1951, "The Board studied the revised plan for water mains on Durham Terrace Tract, in which some 4″ lines were substituted for 6″ mains and the relocation of hydrants. It was moved by Keiper, seconded by Unangst, that the revised plan as outlined and marked by the Chairman be adopted—motion carried."

In the bill of complaint plaintiff averred: That the refusal of defendant-authority to pay for the installation of the requested extensions was "arbitrary, capricious, unlawful and discriminatory"; the defendant authority "has deprived plaintiff of its property without due process of law," and "has unjustly enriched itself at the sole cost and expense of the plaintiff in the amount of $29,867.84"; and that defendant-authority "should be required to make restitution". Plaintiff demanded the following equitable relief: "(a) ... that defendant ... Authority be required to file an accurate account of all moneys received by it from the sale and distribution of all water supplied by said Authority to the occupants of each dwelling unit constructed by plaintiff ...; (b) That upon such accounting, the defendant be required to pay over to the plaintiff all sums of money received by defendant from the users of defendant's water service found to be in excess of the actual cost of serving said water to the users thereof; (c) That (the Court) enter judgment in favor of the plaintiff and against Hellertown Borough Authority in the amount of Twenty-nine Thousand Eight Hundred sixty-seven and 84/100 ($29,867.84) Dollars, together with interest thereon, from the first day of June, 1954; (d) That defendant ... be required to make restitution to the plaintiff for the sum of Twenty-nine Thousand, Eight Hundred Sixty-seven and 84/100 ($29,867.84) Dollars, together with interest thereon, ... "

The acts of defendant-authority must be judged by the provisions of section 4 of the Municipality Authorities Act of May 2, 1945, P. L. 382, as amended, 53 PS §306.

Section 4A provides:

"Every Authority . . . shall be a body corporate and politic, and shall be for the purpose of acquiring, holding, constructing, improving, maintaining and operating, owning, leasing, . . . projects of the following kind and character, waterworks, water supply works, water distribution systems, . . ."

Section 4B provides:

"Every Authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers: . . .

"(h) To fix, alter, charge and collect *rates and other charges* in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties, the payment of the principal of and interest on its obligations, and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations, . . . *and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extension thereof,* in the areas served: . . . *Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof,* may bring suit against the Authority in the court of common pleas of the county wherein the project is located, . . . The court of common pleas shall have *ex-*

*clusive jurisdiction* to determine all such questions involving rates or service. . . . (Italics supplied.)

"(j) To make contracts of every name and nature and to execute all instruments necessary or convenient for the carrying on of its business."

There can be no question that the foregoing statute gave defendant-authority the right to contract with plaintiff, orally or otherwise, to furnish water to plaintiff's housing development, on condition that plaintiff pay the costs of installing the water distribution system. In the exercise of this right defendant-authority entered into negotiations with plaintiff to supply water. The negotiations resulted in a contract whereby defendant-authority agreed to supply water if plaintiff paid for the installation of the mains. Plaintiff accepted the condition by submitting its construction plans to defendant-authority for approval and by proceeding with the work without formal protest of any kind. We deem it significant that plaintiff never intimated to defendant-authority that it would invoke its statutory right to contest the action of defendant-authority as unreasonable or discriminatory. In these circumstances, there can be no doubt that there was an enforceable contract between the parties.

The relationship between a municipality or municipal authority in supplying water is one of contract: Jolly v. Monaca Borough, 216 Pa. 345, 350; Gilfillan v. Haven, 161 Pa. Superior Ct. 114, 117; Penn Iron Company, Limited, v. City of Lancaster, 25 Pa. Superior Ct. 478, 481.

Plaintiff did not have to accept the condition imposed by defendant-authority. If plaintiff considered the condition unreasonable or discriminatory, plaintiff had the statutory right under section 4B ($h$) of the Municipality Authorities Act, supra, to question not only the "reasonableness or uniformity of any rate fixed" but

also the "reasonableness of the Authority's services, including extensions thereof" by bringing suit against the authority in the court of common pleas. Plaintiff did not pursue this statutory remedy but instead proceeded to construct the mains at its own expense as required by defendant-authority. Plaintiff now attempts by an action in equity to disaffirm the contract and obtain restitution of the moneys expended by it for the installation of the mains.

It is our considered judgment that under the facts of this case, the remedy invoked is not available to plaintiff. It has long been established that, in view of the provisions of the Act of March 21, 1806, P. L. 558, 46 PS §156, statutory remedies must first be exhausted before resort to equitable jurisdiction. The act provides: "In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, . . ." See Collegeville v. Philadelphia Suburban Water Company, 377 Pa. 636, 644-646; Oteri Appeal, 372 Pa. 557, 561; Derry Township School District v. Barnett Coal Company, 332 Pa. 174, 177; Taylor v. Moore, 303 Pa. 469.

Furthermore, the quasi-contractual principle of unjust enrichment does not apply to an agreement deliberately entered into by the parties "however harsh the provisions of such contracts may seem in the light of subsequent happenings": Third National Bank & Trust Company of Scranton v. Lehigh Valley Coal Company, 353 Pa. 185, 193. The mere fact that a payment by one person confers a benefit upon another who was under no obligation to make the payment is not of itself sufficient to require the latter to make restitution therefor: Home Owners' Loan Corporation v. Murdock, 150 Pa. Superior Ct. 284, 289.

We need not and do not base our decision solely on these grounds. On the record as presently constituted, plaintiff's bill must be dismissed even if construed as a belated attempt on the part of plaintiff to invoke the statutory remedy. Plaintiff has failed to meet the burden of establishing that the action of defendant-authority was unreasonable or discriminatory.

Under section 4 of the Municipality Authorities Act of 1945, supra, defendant-authority had the right and power "to fix, alter, charge, and collect rates and other charges . . . at reasonable and uniform rates to be determined exclusively by it, . . . and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, . . ."

There was no obligation to supply water to everyone in the borough: Altoona v. Pennsylvania Public Utility Commission, 168 Pa. Superior Ct. 246, 252. "Commissions, as well as courts, must take notice of economic conditions, affecting the ability of a public service company to carry out the orders of the commission": Morris Water Company v. Public Service Commission, 118 Pa. Superior Ct. 416, 420. "In securing benefits and improvements of this and like nature, some discrimination and some preferences may be made; they cannot be measured with mathematical exactness. If there is no manifest injustice, unreasonable discrimination or undue preference . . . the courts will not interfere": Rankin v. Chester Municipal Authority, 165 Pa. Superior Ct. 438, 450; Kohler v. Reitz, 46 Pa. Superior Ct. 350, 355.

If then the instant proceeding is viewed as a complaint invoking the statutory remedy, the basic inquiry is whether the action of defendant-authority evidenced "manifest injustice, unreasonable discrimination, or

undue preference": Rankin v. Chester Municipal Authority, 165 Pa. Superior Ct. 438, 450, supra.

Section 4B(*h*) of the Municipality Authorities Act of 1945, as amended, supra, requires the authority to determine its "rates and *other charges*" for the purpose of providing: (1) "for the payment of the expenses of the Authority"; (2) "for the construction, improvement, repair, maintenance and operation of its facilities and properties"; (3) for "the payment of principal of and interest on its obligations", and (4) "to fulfill the terms and provisions of any agreement made with the purchasers or holders of any such obligations." The act further provides that the "rates and *other charges*" shall be "reasonable and uniform". "This cardinal rule must respect the necessities of the situation created by the foregoing factors": Rankin v. Chester Municipal Authority, 165 Pa. Superior Ct. 438, 448, 449, supra.

The reasonableness and validity of the action of defendant-authority depends also upon the answer to questions such as the following: (1) Will defendant-authority be subjected to unreasonable expenditures? (2) Does it lack the resources to make the extension? (3) Will the consuming public be unduly burdened because of the overdevelopment or premature development of scattered sections of the borough? (4) Will the extension be an unfair burden on the authority's other customers, that is, will the extension require an increase of the rates payable by other patrons? See Altoona v. Pennsylvania Public Utility Commission, 168 Pa. Superior Ct. 246, 253-254, supra; Fayette County Gas Company v. Pennsylvania Public Utility Commission, 153 Pa. Superior Ct. 271; United Natural Gas Company v. Pennsylvania Public Utility Commission, 153 Pa. Superior Ct. 252; Wyoming Val. Water Sup. Co. v. Pub. Serv. Com. of Pa., 104 Pa. Superior Ct. 432; Sherman v. Public Service Commission, 90

Pa. Superior Ct. 523; Shirk v. Lancaster City, 313 Pa. 158, 169-172.

The burden was upon plaintiff to prove its allegation that the action of defendant-authority was "arbitrary, capricious, unlawful and discriminatory": Shirk v. Lancaster City, 313 Pa. 158, supra; Rankin v. Chester Municipal Authority, 165 Pa. Superior Ct. 438, 449, supra.

Plaintiff did not meet this burden. No convincing evidence appears on the record to seriously challenge from any approach the reasonableness of the action of defendant-authority.

Plaintiff's request for the installation of a network of mains to supply water to the 154 dwelling units presented to defendant-authority a special and unique problem requiring the immediate expenditure of a large sum of money. The record is devoid of competent evidence to establish: (1) That defendant-authority possessed the resources to install the network of mains required by plaintiff; and (2) that the requested installation would not subject the authority to unreasonable expenditures. In this connection it is important to note that plaintiff made no attempt to show the effect of the extension on the total return from the over-all operation of the entire system. Cf. Shirk v. Lancaster City, 313 Pa. 158, supra; Rankin v. Chester Municipal Authority, 165 Pa. Superior Ct. 438, 449, supra.

For the reasons herein given, plaintiff's complaint in equity must be dismissed.

## Decree Nisi

And now, March 4, 1957, the motion of defendant-authority for a nonsuit is granted and plaintiff's bill is dismissed. The prothonotary shall enter this decree nisi and give notice to the parties or their counsel, that unless exceptions are filed thereto within 20 days

of this date, the decree entered nisi will become the final decree as of course.