Sewickley Water Works, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued May 8, 1979, before President Judge Bow-
man and Judges Crumlish, Jr., Wilkinson, Jr., Men-
cer, Rogers, Blatt and MacPhail. Judges DiSalle
and Craig did not participate.

*William I. Jack, Dennis L. Veraldi,* and *Ruffin,
Hazlett, Perry & Lonergan,* for petitioner.

*Michael H. Kline,* Assistant Counsel, with him
*Shirley Rae Don,* Assistant Counsel, and *Kathleen
Herzog Larkin,* Chief Counsel, for respondent.

Opinion by Judge Crumlish, Jr., October 1, 1979:
The Public Utility Commission (PUC) determined
that the Sewickley Water Works is a municipal cor-
poration rendering extraterritorial service and is
thereby subject to the PUC's jurisdiction. The Water
Works challenges the PUC's conclusion that it is an
agent that is owned and maintained by the Borough
of Sewickley whose geographic boundaries are co-ex-
tensive with the Borough's.

The Water Works was created by a special act of
the General Assembly, Act of February 21, 1873, P.L.
147 (Water Works Act) for the purpose of ''erecting
and maintaining waterworks to supply with water the
inhabitants of the Borough of Sewickley and such

portions of the adjoining townships as the Commissioners [to be appointed thereafter by the Borough Council] may include.''

The Water Works Act authorizes the appointed Commissioners to lease or purchase property and rights-of-way necessary for the operation of the Water Works provided that all title, rights and privileges thereto vest in the Borough in its corporate capacity. The Water Works Act further empowers the Borough Council to issue bonds in its own name to defray expenses in the maintenance of the Water Works and to guarantee any indebtedness or revenue deficiency. The appointed Commissioners are required to prepare annual reports for the Borough Council and to deposit all water revenues in the Borough Treasury. In the event the Water Works suffers from insufficient revenue from water rents, the Borough Council is authorized to levy and collect a special tax.

The Water Works argues that it is a ''municipal corporation,'' as defined by the Public Utility Code,[1] that is separate and distinct from the Borough and that its geographic boundaries, as set forth in its creating act embrace the adjoining townships it services.

In interpreting the Water Works Act to determine whether or not the General Assembly intended to cre-

_____
[1] See Section 2(15) of the Public Utility Law, Act of May 28, 1937, P.L. 1053, as amended, formerly 66 P.S. §1102(15), repealed by Section 2 of the Act of July 1, 1978, P.L.    , No. 116. A similar provision is now contained in the Public Utility Code, 66 Pa. C.S. §102:

Section 2(15) reads as follows:

'Municipal Corporation' means all cities, boroughs, townships, or counties of this Commonwealth, and also any public corporation, authority, or body whatsoever created or organized under any law of this Commonwealth for the purpose of rendering any service similar to that of a public utility.

ate an entity independent of the Borough, it is necessary to examine the circumstances extant at its passage.[2] The Water Works Act antedated the enactment of Pennsylvania's first general borough code[3] which in its present form enables boroughs to own and maintain waterworks that may be operated by a commission appointed by the borough council. Thus, the creation of a waterworks by special enabling legislation is no longer as it was in 1873 when the Sewickley Water Works was created.

The current Borough Code[4] provisions pertinent to the creation of borough waterworks commissions closely parallel the provisions of the Water Works Act in that they allow boroughs to finance the erection and maintenance of waterworks by issuing general obligation or non-debt revenue bonds, by providing for periodic reports by the commissioners to the borough council and by mandating that the waterworks funds be deposited in the borough treasury.

These circumstances give rise to the reasonable inference that the General Assembly, through the Water Works Act, was attempting to achieve through special legislation what can now be achieved through the Borough Code, *i.e.*, the Borough's owning and operating its own waterworks through a waterworks commission.

Further support for the PUC's conclusion that the Water Works is an agent through which the Borough supplies water and not an independent entity with its own powers and prerogatives as the Water Works contends, is provided by the fact that the Water Works' powers are strictly limited. Where, as here, title to the property vests in the Borough, the Bor-

---

[2] *See* 1 Pa. C.S. §1921.

[3] Act of June 10, 1885, P.L. 81.

[4] The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §47451 et seq.

ough appoints the commissioners, the Water Works cannot contract or borrow money in its own name, the Water Works deposits its revenues in the Borough treasury and the Borough underwrites the Water Works' revenue deficiencies by issuing bonds, the Water Works may properly be viewed as owned and operated by the Borough.

It is beyond dispute that a municipality operating a water system is, for purposes of regulation, a private business corporation. *White Oak Borough Authority Appeal*, 372 Pa. 424, 93 A.2d 437 (1953). A municipality furnishing water service solely within its political boundaries is exempt from regulation by the PUC. However, once it extends its services to customers outside its boundaries, the municipality "becomes a public utility subject to all of the regulatory powers of the Commission [PUC], the same as the Commission [PUC] has over privately-owned public utilities." *Akron v. Pennsylvania Public Utility Commission*, 2 Pa. Commonwealth Ct. 625, 630 (1971), *rev'd on other grounds*, 453 Pa. 554, 310 A.2d 271 (1973).

The Borough of Sewickley, through the Water Works, furnished customers in the Boroughs of Edgeworth, Sewickley Heights, Osborne, and Allepo Township. We thus affirm the PUC's determination that the Water Works, by servicing customers outside the Borough's geographic limits, is rendering extraterritorial service and subject to regulation by the PUC.

Accordingly, we

### Order

And Now, this 1st day of October, 1979, the order of the Pennsylvania Public Utility Commission entered at Investigation Docket No. 189, dated August 29, 1977, is hereby affirmed.

Judge Mencer dissents.