512 A.2d 1312

Association of Community Organizations For Reform Now (ACORN), Lawrence Hart and Josephine Garcia *v.* Carmen Guarino, Individually and as Commissioner of the Philadelphia Water Department, the Philadelphia Water Department and Irvin R. Davis, Individually and as Director of Finance of the City of Philadelphia, City of Philadelphia, Water Department, Appellant.

City of Philadelphia Water Department, Appellant *v.* Consumer Education and Protective Association International, Inc. (CEPA) et al., Appellees.

Consumer Education and Protective Association (CEPA)—Association of Community Organizations For Reform Now (ACORN) and Action Alliance of Senior Citizens of Greater Philadelphia *v.* City of Philadelphia, Philadelphia Water Department, Appellant.

Association of Community Organizations For Reform Now (ACORN), Lawrence Hart and Josephine Garcia, Appellants *v.* Carmen Guarino, Individually and as Commissioner of the Philadelphia Water Department, the Philadelphia Water Department, and Irvin R. Davis, Individually and as Director of Finance of the City of Philadelphia, Appellees.

94

Argued December 11, 1985, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Janet Parrish*, with her, *John Hanger*, for appellant/appellee, Association of Community Organizations For Reform Now (ACORN).

*Gerald T. Clark*, Assistant City Solicitor, with him, *Martha W. Bush*, Deputy City Solicitor, *Michael S. Chuhinka*, Assistant City Solicitor, *Kathryn S. Lewis*, Chief Deputy City Solicitor, and *Barbara W. Mather*, City Solicitor, for appellee/appellant, City of Philadelphia.

OPINION BY JUDGE DOYLE, July 21, 1986:

The matter before us involves the cross appeals of the City of Philadelphia (City) and the Association of Community Organizations For Reform Now (ACORN)

from three orders of the Philadelphia Court of Common Pleas which affirmed in part and modified in part the determinations by the Commissioner of the Philadelphia Water Department establishing sewer and water rates in the years 1979, 1982, 1983 and 1984.[1]

In each of the three cases, a hearing was held on the Water Department's proposed sewer and water rates and thereafter the Commissioner issued findings of fact and conclusions of law in support of his determination. ACORN filed timely appeals from the Commissioner's determinations of July 23, 1979, June 19, 1981 and June 20, 1983, which had established the rates for the applicable years. By separate opinions and orders of October 31, 1984, November 16, 1984, and December 7, 1984, the court of common pleas affirmed in part and modified in part each of the Commissioner's three determinations respectively. ACORN has filed an appeal with this Court challenging only the October 31, 1984 order; the City has appealed all three orders.[2]

---

[1] It is unclear what exact periods are encompassed within the three orders of the court of common pleas. The opinion of the court filed with the order dated October 31, 1984 states that that appeal deals with "rates to be effective as of June 1, 1979"; the opinion filed with the order dated November 16, 1984 addresses relief sought for "water and sewer rates for 1982 and 1983 fiscal years", and the opinion of the court filed in conjunction with the order dated December 7, 1984 addresses "water and sewer rates and charges for the 1984 fiscal year."

[2] An additional party, Consumer Education and Protective Association International, Inc., (CEPA) also appealed to the court of common pleas from the Commissioner's 1981 and 1983 determinations. CEPA has not filed an appeal to this Court but joins in ACORN's brief as a respondent to the City's appeal. We note additionally that, although the issue of disparate rates for in-city residential customers and suburban municipalities was an issue and a subject of the trial court's order of November 16, 1984, ACORN did *not* appeal from that order. This issue was not a subject of the court's order of December 7, 1984.

Where, as here, a full and complete record was developed before the local agency, the reviewing court must affirm the adjudication unless it is in violation of constitutional rights, an error of law has been committed, or a necessary finding of fact is unsupported by substantial evidence. Section 754 of the Local Agency Law, 2 Pa. C. S. §754; *Appeal of McClellan,* 82 Pa. Commonwealth Ct. 75, 475 A.2d 867 (1984).

## I. ACORN APPEAL

In its appeal ACORN alleges that the 1979 rates established for in-city residential customers were unlawful and discriminatory in that they were increased to recover deficiencies created 1) by providing sewer service to suburban municipalities at less than their fully allocated cost; and 2) by granting discounts to charitable institutions, schools, and the Philadelphia Housing Authority.

### A. SEWER SERVICE

The Water Department provides sewer service to suburban customers under long-term contracts with suburban municipalities. It is undisputed that, as of 1979, the revenue received from these municipalities under the previously negotiated contracts covered only 50% of the costs of providing such service, and that the deficiency must be recouped by increased rates to other customers. ACORN contends that the Commissioner and the trial court erred in refusing to reform the contracts to eliminate the disparity between suburban and city rates. In support of its contention ACORN notes that special contracts with customers are prohibited under Pennsylvania Public Utility Law,[3] citing *Byer v.*

---

[3] Act of May 28, 1937, P.L. 1053, *as amended,* repealed by Section 2 of the Act of July 1, 1978, P.L. 598. The Public Utility Law was replaced by the Public Utility Code, 66 Pa. C. S. §§101-3315.

*Peoples Natural Gas Co.,* 251 Pa. Superior Ct. 75, 380 A.2d 383 (1977). In response the City notes that Section 5-802 of the City's Home Rule Charter (Charter), 351 Pa. Code §5.5-802, specifically authorizes the Department to enter into contracts with users outside the city, and argues that this Charter provision has statutory effect and supersedes the holding in *Byer,* citing *Action Alliance of Senior Citizens of Greater Philadelphia, Inc. v. Philadelphia Gas Commission,* 45 Pa. Commonwealth Ct. 234, 406 A.2d 1155 (1979).

We do not reach the merits of this argument, however, for we find that the issue of the suburban contracts was within the exclusive jurisdiction of the Pennsylvania Public Utility Commission (Commission) and therefore was not properly before the court of common pleas. Although a municipality furnishing water service solely within its political boundaries is exempt from regulations by the Commission, once it extends its services to customers outside its boundaries the municipality becomes a public utility subject to all of the regulatory powers of the Commission. *Sewickley Water Works v. Pennsylvania Public Utility Commission,* 46 Pa. Commonwealth Ct. 278, 405 A.2d 1384 (1979); *White Oak Borough Authority v. Pennsylvania Public Utility Commission,* 175 Pa. Superior Ct. 114, 103 A.2d 502 (1954); *City of Altoona v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 246, 77 A.2d 740 (1951). *See Borough of Ridgway v. Pennsylvania Public Utility Commission,* 83 Pa. Commonwealth Ct. 379, 480 A.2d 1253 (1984); *Action Alliance.* The Commission's authority over rate making by municipally owned utilities is currently set forth in Section 1301 of the Public Utility Code (Code), 66 Pa. C. S. §1301, which states in pertinent part:

> Only Public utility service being furnished or rendered by a municipal corporation, or by the

operating agencies of any municipal corporation, beyond its corporate limits, shall be subject to regulation and control by the commission as to rates, with the same force, and in like manner, as if such service were rendered by a public utility.

*See also* Sections 1102, 1501 of the code, 66 P.S. §§1102, 1501. It is well settled that the Commission has exclusive jurisdiction to determine in the first instance matters within its regulatory powers. *Philadelphia Electric Co. v. Human Relations Commission,* 5 Pa. Commonwealth Ct. 329, 290 A.2d 699 (1972).

In the present case, there is no dispute that the issue presented to the court of common pleas, and now before this Court, concerned the propriety of long-term contracts entered into with users *outside* Philadelphia City limits. While the court of common pleas had jurisdiction to hear the appeal insofar as it related to service within the City, *City of Altoona,* it clearly had no jurisdiction to hear the appeal as it related to this extra-territorial service. We must therefore vacate the trial court's order on this issue.

The question then occurs whether this Court may now transfer the resolution of this issue to the Public Utility Commission under the provisions of Section 5103 of the Judicial Code, 42 Pa. C. S. §5103, which now provides that a court which lacks jurisdiction should not quash such appeal or dismiss the matter but should transfer the record "to the proper *tribunal* of this Commonwealth," where the matter would be treated as if originally filed there. Unfortunately, however, when ACORN appealed the Commissioner's determination of July 23, 1979 (the genesis of the Court's order of October 31, 1984) the Judicial Code provided no such transferability. An amendment to Section 5103 of the Judicial Code adding and defining *"tribunal"* as a

proper transferee did not become effective until February 18, 1983. The prior version of Section 5103 of the Judicial Code restricted such transfers to other courts or magisterial districts and accordingly we must remand to the common pleas court for entry of an order quashing ACORN's appeal on this issue. *Township of Reserve v. Zoning Hearing Board,* 78 Pa. Commonwealth Ct. 496, 502-03; 468 A.2d 872, 875 (1983); *Dunlap v. Larkin,* 342 Pa. Superior Ct. 594, 601 n.5, 493 A.2d 750, 754 n.5 (1985).

## B. RATE DISCOUNTS

The Water Department is required to grant reduced rates to charities, schools, and the Philadelphia Housing Authority pursuant to a City ordinance. Philadelphia Code §§13-101(2)(e),(f); 13-201(2)(e),(f). ACORN does not challenge this requirement, but argues that it was unlawful and discriminatory for the Water Department to recover the deficit caused by these reductions by an increase in rates to other residential customers. ACORN contends that the Water Department is not required to be a self-sustaining enterprise, and thus should not be permitted to recoup all of its costs, including the costs of service to charities, etc., when to do so would result in rate discrimination.

Section 5-801 of the Philadelphia Home Rule Charter, 351 Pa. Code §5.5-801, however, clearly states:

> The standards pursuant to which rates and charges shall be fixed by the Department shall be such as to yield the City at least an amount equal to operating expenses and interest and sinking fund charges on any debt incurred or about to be incurred for water supply, sewage and sewage disposal purposes.

The Charter establishes that the Water Department is indeed required to be self-sustaining, inasmuch as it is

required to meet its current operating expenses from the rates and charges it imposes. *See also* §13-101(2) and §13-201(2) of the Philadelphia Code.

ACORN points to a sentence in the commentary note following Section 5-801 of the Charter which states that "a City utility is not necessarily operated on the assumption that the cost of the service which it furnishes must be recouped." This sentence has been taken out of context. It appears in a discussion distinguishing the Water Department's requirement to recoup operating expenses from a private utility's requirement to recoup the full "cost of service," including such items as depreciation. While the Water Department need not recoup the "cost of service" to the same extent as a private utility, there is no question that the Charter requires recoupment of current operating expenses.

For these reasons we conclude that the Commissioner committed no error, and therefore we must reject ACORN's challenge to the trial court's order affirming the Commissioner's determinations on this issue.

## II. CITY APPEAL

In its appeal, the City challenges the trial court's orders which a) required that reduced senior citizen rates be established without income restrictions at 20% of the minimum rate of January 1, 1974; and b) disallowed an expense item of the Department designated "Payment in lieu of taxes" as a reasonable expense to be included in establishing the rates.

### A. REDUCED RATES FOR SENIOR CITIZENS

In all three of his adjudications, the Commissioner approved rates which provided increases in the reduced rates for senior citizens, and established new income qualifications for such reduced rates. The authority for

reduced rates for senior citizens is provided by Section 19-1901 of the Philadelphia Code, which states:

(1) The Water Commissioner is authorized to establish a reduction in charges for water and sewer services, in the amount of 20% of the minimum billings to his residence for any individual, 65 years of age or older, residing in the City of Philadelphia, who directly makes payment to the City for water and sewer services to his residence. In order to qualify for any reduction, the individual must apply through the Department of Collections for a rate reduction within the first billing period for which the reduction is sought.

(2) The Water Commissioner is authorized to continue to bill those senior citizens who qualify for a reduction in water and sewer service charges under Chapter 19-1901(d), at the water minimum and excess services rates, including the 20% reduction in the minimum rates, and the sewer service rates, in effect on January 1, 1974.

The court of common pleas determined that the Commissioner's authority under this section was permissive, not mandatory, and for this reason remanded the matter to the Commissioner for a determination as to whether it was feasible to grant the rate reduction where such would impose an increased burden on other consumers.

On appeal, the City objects not to the remand of this matter as such, but to the following additional requirements contained in the court's orders:[4]

Also, in the event the Commissioner decides it is feasible to grant reductions to this group of consumers, the Commissioner is Ordered to charge

---

[4] The language quoted is taken from the order of November 16, 1984, but language of similar import appears in the two other orders of the trial court.

> this group at the level of the minimum water and sewer rent charges, including the twenty per-cent (20%) reduction in minimum water and sewer rates, in effect on January 1, 1974.
>
> In addition, it is Ordered that all standards heretofore imposed by the Commissioner as a prerequisite for qualification for such senior citizens be removed and no standards shall be imposed other than those delineated by applicable Ordinance.

The City argues that the interpretation given to the ordinance in the court's order is in error in that it is inconsistent with Section 5-801 of the Charter which gives the Water Department the discretion to "fix and regulate rates and charges."

We agree with the City only to the extent that the ordinance itself should not be interpreted as requiring any *particular* rate or charge where the discretion has been given to adopt one of two alternatives. In this respect the trial court may have overlooked the fact that Section 19-1901(2) of the Philadelphia Code, which permits the Water Department to continue charging at 20% of the minimum rate in effect in 1974, does not prevent the Department from raising the rates under Section 19-1901(1) to reflect a 20% discount of the *current* minimum billings. We must agree with the trial court, however, to the extent that the Department does not have complete discretion in determining the *amount* of the discount; it must be *either* 20% of the 1974 minimum rate *or* 20% of the current minimum rate. This interpretation does not, as the City suggests, usurp the authority of the Department to set rates, since the ordinance itself does not establish what the minimum rate must be.

The City alleges, however, that the Department no longer charges on the basis of "minimum rates", and is

thus forever precluded from changing the amount of senior citizen discount under the present interpretation of this ordinance. If this is true, it may well limit the options of the Department to those originally set forth by the trial court's orders: that is, either a twenty percent (20%) reduction in minimum water and sewer rates in effect on January 1, 1974—when minimum rates were used—or no reduction at all. This limitation however, was actually not placed on the Department by the ordinance, but by the Department's own actions. The Department is still free to establish "minimum rates" and to provide a 20% discount to those rates for senior citizens.

In addition, we must agree with the court of common pleas that there should be no prerequisite for qualification for the reduced rates except those appearing in Section 19-1901 of the Philadelphia Code. There is simply no authority for the Department's requirement that an applicant meet certain income requirements in order to receive the reduced rates. The ordinance states that the reduction, if given, is to be given to "any individual 65 years of age or older, residing in the City of Philadelphia." Thus, we shall affirm the order of the trial court on these issues, with the slight modifications as indicated.

## B. Payment in Lieu of Taxes

The Commissioner approved rates for 1982, 1983 and 1984 which included an expense designated "Payment in Lieu of Taxes" as an expense item in the Department's operating budget. The court of common pleas found that the Department had no authority to include such an expense, and reversed the Commissioner's decision on this issue.

In support of the Department's authority to include such expense, the City cites language in Section 5-801 of the Charter, which provides:

> In computing operating expenses, there shall be included proportionate charges for all services performed for the Department by all officers, departments, boards or commissions of the City.

The trial court interpreted this provision to authorize the inclusion only of interdepartmental charges actually charged for services specifically performed for the Water Department. The City argues that, in addition to these charges, the provision also authorizes the inclusion of proportionate charges for general governmental services provided to all City residents, such as police protection, fire protection, and street cleaning.

We agree with the trial court that the Charter provision was not intended to authorize or require "payment in lieu of taxes" as an expense for the Department's share of general City services. The charges which must be specifically included are for those services "performed *for* the *Department*" by other City departments, not those services generally performed for *all* City residents.

The City notes that the payment in lieu of taxes is no more than the Department's appropriate share of the tax burden which it would be required to pay if it were a business or a privately owned utility. While this is true, the fact remains that the Department is not a private utility subject to tax liability and, absent a more specific mandate from the Charter, it has no authority to assume such liability.

For this reason we conclude that the trial court was correct in reversing the Water Commissioner on this issue, and accordingly affirm its orders in this respect.

### Order in 3721 C.D. 1984 and 3612 C.D. 1984

And Now, July 21, 1986, the order of the Philadelphia Court of Common Pleas, No. 1308 August Term, 1979, dated October 31, 1984, and entered November 20, 1984, is hereby vacated as it regards the issue of the suburban sewer contracts raised at 3612 C.D. 1984, and the matter in that respect is remanded to the court of common pleas for the entry of an appropriate order to quash.

On the issue of reduced rates for senior citizens raised at 3721 C.D. 1984, this matter is remanded to the Water Commissioner; if the Commissioner decides it is feasible to grant a reduction, the Commissioner is ordered to charge the group either at the level of the minimum water and sewer rent charges, including the 20% reduction in minimum water and sewer rates in effect on January 1, 1974, or at the level of 20% of the minimum billings currently in effect.

In all other respects, the order of the court of common pleas is affirmed.

### Order in 3722 C.D. 1984

And Now, July 21, 1986, the order of the Philadelphia Court of Common Pleas No. 4392, June Term, 1981, dated November 16, 1984, and entered November 27, 1984, is hereby modified as follows:

This matter is remanded to the Water Commissioner on the issue of reduced rates for senior citizens; if the Commissioner decides it is feasible to grant a reduction, the Commissioner is ordered to charge the group either at the level of the minimum water and sewer rent charges, including the 20% reduction in minimum water and sewer rates in effect on January 1, 1974, or at the level of 20% of the minimum billings currently in effect.

In all other respects, the order of the court of common pleas is affirmed.

ORDER IN 223 C.D. 1985

NOW, July 21, 1986, the order of the Philadelphia Court of Common Pleas, No. 1922, July Term, 1983, dated December 7, 1984, and entered December 7, 1984, is hereby modified as follows:

This matter is remanded to the Water Commissioner on the issue of reduced rates for senior citizens; if the Commissioner decides it is feasible to grant a reduction, the Commissioner is ordered to charge the group either at the level of the minimum water and sewer rent charges, including the 20% reduction in minimum water and sewer rates in effect on January 1, 1974, or at the level of 20% of the minimum billings currently in effect.

In all other respects, the order of the court of common pleas is affirmed.