575 A.2d 160

CONSUMER EDUCATION AND PROTECTIVE ASSOCIA-
TION INTERNATIONAL, INC. and Valerie Waller

v.

PHILADELPHIA WATER DEPARTMENT COMMISSIONER
William J. Marrazzo, and the City of Philadelphia.

Appeal of CONSUMER EDUCATION AND PROTECTIVE
ASSOCIATION INTERNATIONAL, INC.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1989.

Decided May 14, 1990.

Reargument Denied June 28, 1990.

Petition for Allowance of Appeal
Granted Dec. 18, 1990.

Steven P. Hershey, with him, Jonathan M. Stein, Philadelphia, for appellant.

Pamela Foa, Divisional Deputy City Sol., with her, Seymour Kurland, City Sol., for appellees.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, BARRY, COLINS, McGINLEY and SMITH, JJ.

COLINS, Judge.

Consumer Education Protective Association (CEPA or appellant) appeals from an order of the Court of Common Pleas of Philadelphia County which dismissed its appeal from a rate determination for water and sewer services rendered by the City of Philadelphia's (City) Water Commissioner, William J. Marrazzo (Water Commissioner).

In the spring of 1985, the Philadelphia Water Department (Department) notified City Council and the general public of a proposed change in water and sewer rates for the rate period from January 1, 1986 through June 30, 1987. The Department published notices of hearings on the proposed rate increase on April 26, 1985. The Managing Director of the Department appointed Phoebe Haddon Northcross as Hearing Examiner to oversee the rate proceedings. She was to preside at the pre-hearing conference and all formal and informal hearings. She was charged with the duty of

resolving evidentiary and discovery disputes among the participants and with the preparation of a written report to be submitted to the Water Commissioner, including a synopsis of the factual evidence received concerning the proposed rate increase. Pre-hearing conferences were held on July 9 and July 23, 1985, where the procedure to be followed in discovery and in the public and formal hearings was established. The Department agreed to fund up to $75,000.00 of the expenses of the Association of Community Organizations for Reform Now (ACORN) and CEPA, for adequate representation of the public in this proceeding. Discovery by the formal parties to the rate proceeding began on June 18, 1985. By letter dated July 30, 1985, CEPA's counsel notified the Commissioner of Records that Community Legal Services was intervening in the rate hearings on behalf of CEPA and ACORN.

Public hearings were held on July 9 and July 10, 1985, and on August 15 and 19, 1985. These hearings were scheduled during day as well as evening hours in order to allow for maximum public participation. The transcripts of these hearings are lengthy and all those members of the public who expressed a desire to participate were accommodated by the Hearing Examiner. A total of 28 statements from members of the public were submitted for consideration.

There were eight days of formal rate hearings, from August 12 to August 23, 1985. At those hearings, the parties presented and cross-examined witnesses. In his decision, the Water Commissioner listed the parties at those formal hearings as including the Department, CEPA, ACORN, Citizens Utility Board (CUB), and Jacob Czitron, all of those other than the Department being listed as intervenors. The Department presented the testimony of four consultants and five witnesses from within the Department. The testimony of two expert witnesses was presented on behalf of CEPA and other residential customers. CUB presented the testimony of three witnesses. Jacob Czitron agreed to present his testimony in the public hearings.

On December 3, 1985, the Water Commissioner issued his revenue determination for the period from January 1, 1986 through June 30, 1987. This revenue determination called for a 22.6% increase in water rates for residential customers. CEPA and Valerie Waller, a water customer,[1] filed an appeal with the trial court on December 18, 1985. The rate increase was thereafter modified to 18% by an order of the trial court dated December 27, 1985, which approved a stipulation by the parties. The new rates were put into effect on January 10, 1986. By order dated August 3, 1988, the trial court dismissed the appeal for lack of standing.[2] This appeal ensued.

Appellant raises the following issues for review: (1) whether CEPA has standing to bring this appeal; (2) whether ratepayers were denied due process of law; and (3) whether the revenue determination is supported by substantial evidence or is wrong as a matter of law.

## STANDING

The trial court concluded that CEPA and Waller were not proper parties in the rate proceeding and, therefore, had no standing to appeal from the revenue determination. Citing Section 8–407 of the Philadelphia Home Rule Charter (Charter), 351 Pa.Code § 8.8–407, the trial court concluded:

> [t]he rationale behind the Charter's provisions is that only those aggrieved persons who file a request for a hearing in writing with the Department of Records within 30 days of the publication of notice are 'parties' to the hearing itself. In the instant case notices were published on April 26, 1985. Appellant wrote to the Department of Records on July 30, 1985. Clearly this filing was beyond the time when a hearing could be requested.

1. Valerie Waller is not listed on the caption as an appellant in this proceeding. She was listed as an appellant at the trial court level. This is of no moment to our decision, as we conclude that CEPA has standing to appeal.

2. Although the trial court's order concluded only that CEPA and Waller had no standing and, therefore, that the appeal was to be dismissed, the opinion of the trial court disposed of the merits.

From a thorough examination of the record as well as Appellant's briefs it is unclear precisely what counsel for the Appellant meant when he stated in his letter that CEPA has 'intervened' in the hearings. However it is beyond doubt that Appellants did not follow the procedure mandated by the Charter within the time limit set forth therein. We must therefore conclude that CEPA never gained standing to file an appeal to the rate determinations by the Water Commissioner, even though it participated in the hearings, hence the dismissal of this appeal.

(Trial court opinion at 3 (footnotes omitted).)

This Court has held that an association may have standing as a representative of its members to bring an appeal. *See Tripps Park Civic Association v. Pennsylvania Public Utility Commission,* 52 Pa.Commonwealth Ct. 317, 415 A.2d 967 (1980), and *Concerned Taxpayers of Allegheny County v. Commonwealth,* 33 Pa.Commonwealth Ct. 518, 382 A.2d 490 (1978). We hold that CEPA maintains representational standing to assert the rights of its individual members, some of whom are water customers.

In doing so, we reject the City's contention that because CEPA and Waller did not plead a "pecuniary interest" in this rate determination, that they were correctly denied standing to appeal. In *Tripps Park* we recognized that although the contested customer status was never formally or explicitly stated on the record, it could be reasonably inferred from the testimony of the witnesses. Our exhaustive review of the record testimony of numerous witnesses for CEPA at the public hearings, as well as those witnesses presented by CEPA at the formal hearings, indicates that customer status can be reasonably inferred therefrom.

Our conclusion is buttressed by the fact that the Department agreed to fund CEPA's and ACORN's participation on behalf of the public in this rate proceeding up to an amount of $75,000.00. Furthermore, the Hearing Examiner stated at the public hearing of August 19, 1985 that the telephone

numbers of the Department as well as CEPA were placed in newspaper advertisements to enable the public to obtain information about the rate proceedings. Finally, in his revenue determination the Water Commissioner listed CEPA as a party to the formal proceedings.

Accordingly, we hold that CEPA and Waller had standing to appeal the Water Commissioner's revenue determination to the trial court.[3] Having so concluded and noting that the trial court addressed the merits of the appeal, we shall now proceed to dispose of the issues raised.

## DUE PROCESS

CEPA submits that the due process rights of water customers were violated by the commingling of functions by the Water Commissioner. The resolution of this question requires that this Court determine whether water customers have a property interest in rate-making conducted by the Department. Contrary to appellant's assertions, we conclude that the trial court did not err in holding that water customers have no such property interest.

We begin our analysis by emphasizing that this case involves a rate increase instituted by the Philadelphia Water Department, an entity whose determinations are not subject to review by the Pennsylvania Public Utility Commission (PUC), but instead are subject to review through the Philadelphia Court of Common Pleas. Therefore, the PUC cases cited by appellant are not dispositive of our decision in this case.

As pointed out by the City in its brief to this Court, there is a significant body of federal caselaw on this subject. Federal courts have consistently held that ratepayers do not have a sufficient property interest in rates to invoke the procedural due process protections of the Fourteenth

3. In *Ass'n of Community Organizations for Reform Now v. Guarino*, 99 Pa.Commonwealth Ct. 93, 512 A.2d 1312 (1986), *petition for allowance of appeal denied*, 514 Pa. 636, 522 A.2d 1106 (1987), this Court decided an appeal by ACORN and CEPA from an order of the trial court which affirmed in part and modified in part the determinations made by the Water Commissioner. No challenge to the standing of ACORN or CEPA was made in that appeal.

Amendment to the United States Constitution, U.S.CONST. amend. XIV. *See e.g. Holt v. Yonce,* 370 F.Supp. 374 (1973), *aff'd,* 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974); *Georgia Power Project v. Georgia Power Co.,* 409 F.Supp. 332 (N.Dist.Ga.1975); *Sellers v. Iowa Power and Light Co.,* 372 F.Supp. 1169 (S.Dist.Iowa 1974) (welfare recipients have no due process rights in rates).

An examination of Pennsylvania caselaw leads to the same conclusion that ratepayers do not have a property interest in rates and ratemaking. Appellant's citation of *Barasch v. Pennsylvania Public Utility Commission,* 119 Pa.Commonwealth Ct. 81, 546 A.2d 1296, *clarified, reh'g denied in part,* 119 Pa.Commonwealth Ct. 81, 550 A.2d 257 (1988), *petition for allowance of appeal denied,* 523 Pa. 652, 567 A.2d 655 (1989), for the proposition that water customers of the Department have such an interest is misleading. *Barasch* involved PUC approval of a contract between a utility and a cogenerator, not a general rate increase. Furthermore, this Court's decision in *Barasch* was based upon *Conestoga National Bank of Lancaster v. Patterson,* 442 Pa. 289, 275 A.2d 6 (1971). In *Conestoga* it was determined that due process protections apply where actions enhance pecuniary interests of some persons but are harmful to the interests of others. This is so because such actions are adjudicatory in nature and should not be given effect without affording those persons adversely affected an opportunity to be heard.

In *Barasch,* an examination of the statutory scheme pursuant to which rates are set was undertaken to determine precisely what process was due. In *Barasch,* the statutory scheme was, of course, set forth in the Public Utility Code, 66 Pa.C.S. §§ 101–3315, which establishes a detailed process by which rates are examined and approved. Ratepayers may participate in the process, not because of a vested property right, but because the statutory scheme provides a vehicle for such participation.

In the instant matter, the statutory scheme is set forth in the Philadelphia Code and the Charter. Section 5–801 of the Charter requires that the Water Department fix rates

and provides for oversight through the budget mechanism by City Council. 351 Pa.Code § 5.5–801. Review of the Water Commissioner's revenue determination is through the trial court. This process provides ratepayers a sufficient opportunity to be heard on the issue of a rate increase.

■ We agree with the City that in this case the proceedings carried out by the Hearing Examiner were for the purpose of gathering information to be considered by the Water Commissioner in determining whether a rate increase was necessary. As this Court concluded in *Pennsylvania State Association of Township Supervisors v. Insurance Department*, 50 Pa.Commonwealth Ct. 204, 412 A.2d 675 (1980), the hearings in this case were "by definition" investigatory rather than adjudicatory in nature. Because we conclude that ratepayers have no property right in rates and ratemaking and that the procedure conducted by the Hearing Examiner was investigatory rather than adjudicatory, no due process rights attached. Thus, this Court need not reach the question of commingling of functions by the Water Commissioner.

## RATE DETERMINATION

■ Appellant's final contentions are addressed to the evidence supporting the revenue determination. Our thorough examination of the record including the revenue determination itself reveals substantial evidence in support thereof and an absence of errors of law.[4]

## CONCLUSION

Based on the foregoing discussion, the order of the trial court is reversed insofar as it dismissed the appeal for lack of standing and is affirmed in all other respects.

CRUMLISH, Jr., President Judge, did not participate in this decision.

4. Appellant argues that the transfer of interest earnings from the Department's accounts to the City General Fund was improper as an illegal tax. The trial court ruled in favor of appellant on this issue. (Trial court opinion at 21.) Thus, this Court has not entertained the issue.

## ORDER

AND NOW, this 14th day of May, 1990, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed insofar as it dismissed the appeal for lack of standing, and is affirmed in all other respects.