The PUBLIC ADVOCATE AND CONSUMERS EDUCATION AND PROTECTIVE ASSOCIATION and Tenant Action Group and Action Alliance of Senior Citizens, Appellants,

v.

CITY OF PHILADELPHIA
and Philadelphia Water
Department.

Commonwealth Court of Pennsylvania.

Argued May 8, 1995.

Decided July 17, 1995.

Steven P. Hershey, for appellants.

David A. Katz, Divisional Deputy City Sol., for appellees.

Before KELLEY, NEWMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

The Public Advocate, Consumers Education and Protective Association, Tenant Action Group, and Action Alliance of Senior Citizens (collectively, The Public Advocate) appeal from the September 14, 1993, October 13, 1993, and November 22, 1993 orders of the Court of Common Pleas of Philadelphia County (trial court) refusing to set aside the water rates established by the Philadelphia Water Department for the fiscal years 1993–1996.

On appeal, the Public Advocate claims that the transfer of excess interest earnings from the Water Department's revenue bond Sinking Fund Reserve Account to the City's General Fund is illegal and causes the rates fixed to be unjust and unreasonable.

■ The General Water and Sewer Bond Ordinance of 1974, City of Philadelphia Bill 1263 (Bond Ordinance), at issue here, requires the Water Department to transfer excess interest earnings on bond revenues to the City's General Fund.[1] The issues before us are whether the transfer of excess interest earnings, pursuant to the Bond Ordinance, is an illegal payment in lieu of taxes and whether the Public Advocate waived its right to raise this issue before the trial court. We conclude that the transfer of excess interest earnings to the General Fund as required by the Bond Ordinance is not unlawful; therefore, we affirm the trial court's order on different grounds.[2]

## Background

After extensive hearings on the Water Department's proposal to increase rates for fiscal years 1993 through 1996, the Water Commissioner issued a Rate Determination, calling for no increase in fiscal year 1993, imposing a seven percent increase for fiscal year 1994, and imposing subsequent increases equal to the annual inflation rate for fiscal years 1995 and 1996.

The Water Department budgeted $2.036 million for fiscal year 1993 and $4.138 million for fiscal years 1994 through 1996 to be transferred to the City's General Fund pursuant to the Bond Ordinance.

1. As noted by the City in its brief, subsequent to the enactment of the Bond Ordinance, the City enacted the Fifth Supplemental Ordinance to the General Water and Sewer Revenue Bond Ordinance, Bill No. 1685, December 7, 1978, and the Seventh Supplemental Ordinance to the General Water and Sewer Bond Ordinance, Bill No. 834, September 24, 1981, which limit the amount transferable from the Sinking Fund Reserve Account to the General Fund to $4,994,000.00. The transfer limitation is also recognized in the ordinance which presently governs the issuance of water and sewer revenue bonds, the Restated General Water and Wastewater Revenue Bond Ordinance of 1989.

2. This Court may affirm the trial court's judgment on any basis clear on the record. *Civil Service Commission v. Paieski*, 126 Pa.Commonwealth Ct. 263, 559 A.2d 121 (1989), *petition for allowance of appeal denied*, 524 Pa. 635, 574 A.2d 75 (1990).

The Public Advocate, which represents low-income residential customers of the Water Department, in addition to participating in the administrative hearings, also filed with the trial court a complaint in equity seeking to enjoin the implementation of the Commissioner's Rate Determination. The Public Advocate alleged, *inter alia,* that the transfer of excess interest earnings is an illegal payment in lieu of taxes and, in itself, makes the rates promulgated by the Commissioner not just and reasonable.

By order of September 14, 1993, the trial court directed the City and the Department (the City, collectively), within twenty days, to rewrite the Rate Determination to comply with certain procedural requirements, not specifically at issue here.[3] In its opinion, the trial court considered the matter an appeal of the Commissioner's Rate Determination, rather than an original action, and accordingly applied the limited scope of review relevant to the review of rate making by a local agency.

With respect to the Public Advocate's challenge to the transfer of excess interest earnings to the City's General Fund, the trial court determined that the Public Advocate had waived its right to raise the issue for failing to raise it at the rate hearings. The court explained that the Public Advocate could have avoided waiver of the issue by challenging the legislature's statute authorizing the City Ordinance; however, counsel for the Public Advocate explicitly stated that it was not challenging the statutory scheme authorizing the Ordinance.

Nonetheless, the court noted in a footnote that the claim appears to be meritorious. The court stated that "[t]he Court cannot view as just and reasonable rates that require ratepayers to subsidize transfers of Water Department funds to the general fund." (Trial Court's September 14, 1993 opinion at 9, n. 5). In so concluding, the trial court found that the Public Advocate had

established a clear nexus between the customer payments and the transferred funds.

The Public Advocate filed a motion for reconsideration, which the trial court denied by order of October 13, 1993. The trial court issued its final order on November 22, 1993, entering judgment for the City.

### Excess Interest Transfer

■ On appeal to this Court, the Public Advocate argues that the transfer of excess interest earnings to the City's General Fund is illegal and unconstitutional. Citing *Public Advocate v. Philadelphia Gas Commission,* 161 Pa.Commonwealth Ct. 428, 637 A.2d 676, *petition for allowance of appeal granted,* 539 Pa. 660, 651 A.2d 545 (1994) (*Public Advocate v. PGC*), the Public Advocate contends that the transfer is an illegal payment in lieu of taxes because no specific service is received by the customer for the payment. Additionally, the Public Advocate argues that the trial court specifically held this transfer to be an illegal tax in *Consumer Education and Protective Association International, Inc. v. Philadelphia Water Department Commissioner,* 133 Pa.Commonwealth Ct. 148, 575 A.2d 160 (1990), *aff'd,* 528 Pa. 600, 600 A.2d 189 (1992) (*CEPA*). The Public Advocate distinguishes *Appelmans v. Philadelphia,* 826 F.2d 214 (3rd Cir.Pa.1987), in which the Third Circuit held that such a transfer is not an illegal tax, on the basis that *Appelmans* involved an alleged equal protection violation. Additionally, the Public Advocate asserts that, unlike this case, in *Appelmans,* no nexus had been shown between the transferred funds and the customer payments.

We disagree with the Public Advocate's contentions. First, the City enacted the Bond Ordinance in accordance with The First Class City Revenue Bond Act, Act of October 18, 1972, P.L. 955, No. 234, *as amended,* 53 P.S. §§ 15901–924 (Bond Act). The Bond Act authorizes the issuance of revenue bonds for the purpose of financing or refunding the cost of projects. 53 P.S. §§ 15903 and 15904. Under the Bond Act, a

---

**3.** The court held that the Commissioner had failed to adhere to Section J(2) of Regulation 74, which requires that "[s]hould the Water Commissioner ... reject ... any parts of the Hearing Officer's Report, the Rate Determination shall state the reasons for the rejection ... making reference to those portions of the Hearing Record supporting the Rate Determination." (Trial Court's September 14, 1993 opinion at 16.)

city ordinance authorizing the issuance of revenue bonds must contain provisions for the establishment of a sinking fund. 53 P.S. § 15907. The sinking fund is to be established for the payment of interest on the bonds and bond principal as it becomes due. 53 P.S. § 15909. With reference to excess moneys in the sinking fund, the Bond Act provides:

Excess moneys in the sinking fund, including moneys for the payment of the interest, principal or premium of bonds unclaimed after the due date for two years, and excess moneys in other funds shall be repaid to the city for its general purposes or applied as may be provided in the bond ordinance, but such repayment of unclaimed moneys shall not discharge such claim which shall continue subject to applicable law.

53 P.S. § 15909. The Public Advocate does not dispute that the Bond Act, thus, expressly authorizes the transfer of excess interest earnings on bond revenues by the Water Department to the General Fund of the City, as required by the Bond Ordinance. The Public Advocate has never challenged the validity of the Bond Act.

■ Second, as noted by the Third Circuit in *Appelmans,* the Pennsylvania Supreme Court held in *Shirk v. Lancaster,* 313 Pa. 158, 169 A. 557 (1933), that a municipal utility is legally entitled to a fair return including a reasonable profit on its investment in its water system and that the purpose for which profits are used is within the sound discretion of the municipal authorities. This Court has held that an imposition of charges in lieu of tax on its customers is unlawful. *See, e.g., Public Advocate v. PGC; Association of Community Organizations for Reform Now v. Guarino,* 99 Pa.Commonwealth Ct. 93, 512 A.2d 1312 (1986), *petition for allowance of appeal denied,* 514 Pa. 636, 522 A.2d 1106 (1987). A necessary predicate to the finding of an unlawful tax is a direct taking of customer funds. *See, e.g., Public Advocate v. PGC.* Therefore, we need not consider whether the transfer, in this case, constituted an unlawful tax unless the customers have a property interest in or entitlement to the transferred funds. The assumption (even if valid) that customers have a property interest in funds acquired from them in the form of rates does not lead to the conclusion that customers have a similar interest in excess interest on invested monies in a sinking fund reserve. *Appelmans.*

In *Appelmans,* involving a challenge to the transfer of excess interest from the Philadelphia Gas Works' (PGW's) Sinking Fund Reserve to the City's General Fund, the Third Circuit Court of Appeals ruled that customers of PGW had failed to establish an equal protection violation because they had failed to show a protected property interest in the funds at issue. In that case, it was undisputed that the reserve was funded from proceeds of the bond sale; the funds were originally the property of the bond purchasers. Because the transferred funds were not derived from payments by customers or from earnings on such revenues, the Third Circuit determined that there was no direct nexus between the customer funds and the transferred funds which could support a property interest in the customers. Additionally, the Third Circuit held that the customers had failed to show any legal entitlement as a result of a legal requirement that the transferred funds be applied toward a rate reduction. To the contrary the Third Circuit determined that *Shirk* and the Bond Act specifically recognize the right of the city to use the excess interest for its general purposes.

In our case, the Public Advocate asserts that while the transferred funds are interest earned on bond proceeds, customers pay the debt service supporting the bonds, and, neither the bond proceeds nor the interest earnings would exist but for customer payments. Therefore, the Public Advocate claims that a sufficient nexus exists between the transferred funds and the customer payments. This issue was not raised at the rate hearings; therefore, the only relevant evidence is the testimony of Dean Kaplan, Deputy Water Commissioner in charge of Finance, who testified at the injunction hearing. Mr. Kaplan clearly stated that the excess interest earnings do not come from customer revenues but from interest on bond proceeds. (Original Record, Hearing of July 14, 1993, N.T. at 341.) Mr. Kaplan acknowledged that the

customers pay the debt service on the bonds. (*Id.* at 342.) Without explanation, the trial court stated that the nexus between the customer payments and the transferred funds had been clearly established.

We disagree. The excess interest earnings here, as in *Appelmans,* are derived from the investment of the proceeds of bond sales. The application of revenues derived from the operation of the utility to service the debt on bonds does not confer on customers a property right to the *excess interest* earnings on the bond proceeds. The Bond Act; *Shirk; Appelmans.* Consequently, we conclude that the transfer of these funds does not constitute an unlawful tax.

A contrary result is not mandated by *CEPA.* In its order, the trial court in *CEPA* merely dismissed the customers' appeal from a rate determination for a lack of standing. In its opinion, however, the trial court unnecessarily addressed the merits, ruling that the transfer of excess interest earnings from the Water Department's accounts to the City General Fund was an illegal tax. On appeal, this Court reversed the trial court's order dismissing the appeal for a lack of standing. This Court then held that the record contained substantial evidence in support of the rate determination. This Court did not entertain the issue relating to the legality of the transfer of interest earnings because the trial court had ruled in favor of appellants. *See CEPA,* 133 Pa.Commonwealth Ct. at 155, n. 4, 575 A.2d at 164, n. 4. The Supreme Court affirmed without an opinion. We, however, cannot consider the trial court's dictum as persuasive in the case before us.

Additionally, the case before us is distinguishable from *Public Advocate v. PGC.* In that case we held that an ordinance's requirement of an annual fixed payment to the City from PGW's revenues was an illegal payment in lieu of tax. We reasoned that the fixed payment was not proportionate to any benefits which the customers actually received; therefore, the legal effect of the payment is a tax. Unlike our case, however, in *PGC,* there was no dispute that the customers had contributed to the subject revenues.

## Waiver

The Public Advocate acknowledges that it did not raise at the rate hearings its challenge to the transfer of excess interest earnings. The Public Advocate asserts that its suit before the trial court was not an appeal of the rate determination but an original action in equity, therefore, not implicating the doctrine of waiver. The trial court heard evidence relating to the Public Advocate's request for an injunction, including testimony relating to the excess interest transfer. (Original Record, Hearing of July 13, 1993, N.T. at 313–314; Hearing of July 14, 1993, N.T. at 341–342.) Although the trial court referred to that evidence in its discussion of the merits of the Public Advocate's claim, the trial court deemed the action an appeal from the rate determination and limited its review to the record developed before the agency. The Public Advocate's Second Amended Complaint, which apparently contains the relevant cause of action, is not contained in either the reproduced record or the original record. We cannot, therefore, conclusively determine whether the cause of action at issue was in the nature of an appeal or an original action. As noted above, however, regardless of our resolution of the waiver issue, the Public Advocate's claim on the merits cannot prevail. Because we are empowered to affirm the trial court's order on any basis clear on the record, *Civil Service Commission v. Paieski,* 126 Pa.Commonwealth Ct. 263, 559 A.2d 121 (1989), *petition for allowance of appeal denied,* 524 Pa. 635, 574 A.2d 75 (1990), we have decided this case on the merits.

Because we conclude that the transfer of excess interest earnings to the City's General Fund is not unlawful, we affirm the final order of the trial court dated November 22, 1993, entering judgment for the City.

## ORDER

**AND NOW,** this 17th day of July, 1995, the order of the Philadelphia Court of Common Pleas, dated November 22, 1993 at May Term, 1993, No. 2159 is hereby affirmed.