The PUBLIC ADVOCATE, Action Alliance of Senior Citizens of Greater Philadelphia and Tenant Union Representative Network, Appellants

v.

Bernard BRUNWASSER, Water Commissioner, Philadelphia Water Department and City of Philadelphia.

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2011.

Decided May 4, 2011.

262

Philip A. Bertocci, Philadelphia, for appellants.

Andre C. Dasent, Philadelphia, for appellees.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

This matter comes to this Court on appeal from the May 12, 2010, order of the Court of Common Pleas of Philadelphia County (trial court), dismissing on prelimi-

nary objections a complaint for declaratory and injunctive relief. The gist of the complaint is a challenge to the legality of an increase in water rates. (Reproduced Record (R.R.) at 2a–207a.) The named plaintiffs in the complaint are Appellants The Public Advocate,[1] Action Alliance of Senior Citizens of Greater Philadelphia, and Tenant Union Representative Network (collectively, Public Advocate). The named defendants are Appellees Philadelphia Water Commissioner Bernard Brunwasser (Commissioner), the Philadelphia Water Department (PWD), and the City of Philadelphia (City) (collectively, Appellees). For the reasons that follow, we reverse the trial court and remand for further proceedings.

## I. BACKGROUND

Section 3–100 of the Philadelphia Home Rule Charter (Charter)[2] established PWD as part of the Executive and Administrative Branch of the City government. The Water Commissioner is the head of PWD. (Charter § 3–101.) The Managing Director of the City, who is appointed by the Mayor, appoints the Water Commissioner. (Id. §§ 3–204, –206.)

PWD has oversight of the water supply and sewage system and disposal within the City. Specifically, the Charter provides:

The Water Department shall have the power and its duty shall be to perform the following functions:

(a) Water. It shall operate the City's water supply system, and shall either itself, or by contract, construct, maintain, repair and improve City water supply facilities, including fire and drinking

hydrants and water meters. It shall make investigations and prepare plans and estimates looking towards the acquisition by the City of new and better sources of water supply, and shall, with the approval of the Managing Director, make its recommendations to the Mayor for transmission to the Council. It shall also investigate and adopt methods for improving the quality of the water supply.

(b) Sewage and Sewage Disposal. The Department shall operate, and itself, or by contract, maintain, repair and improve the City's sewage system and sewage disposal plants. When authorized by the Council, it shall acquire, design and construct additional sewage disposal plants and sewage facilities.

(Id. § 5–800.) With respect to establishing rates and charges, the Charter provides:

In accordance with such standards as the Council may from time to time ordain, the Water Department shall fix and regulate rates and charges for supplying water, including charges to be made in connection with water meters, and for supplying sewage disposal services. The standards pursuant to which rates and charges shall be fixed by the Department shall be such as to yield to the City at least an amount equal to operating expenses and interest and sinking fund charges on any debt incurred or about to be incurred for water supply, sewage and sewage disposal purposes. In computing operating expenses, there shall be included

---

1. The City of Philadelphia retains the professional services of "public advocates" to represent the interests of its citizens in rate proceedings before the Philadelphia Water Department. Here, the public advocate is Community Legal Services, Inc. (R.R. 90a.)

2. The Charter is codified in the Pennsylvania Code at 351 Pa.Code §§ 1.1–100 to 12.1–503. For ease of reference, we will refer to provisions of the Charter by their official designations, as found at www.phila.gov.

proportionate charges for all services performed for the Department by all officers, departments, boards or commissions of the City.

(*Id.* § 5–801 (emphasis added).)[3] PWD performs its ratemaking function by regulation, promulgated pursuant to procedures set forth in Section 8–407 of the Charter. The rates and charges that PWD establishes· and the procedures by which it establishes them, including provisions for hearing and public comment, are set forth in Chapter 3 (Sections 300.0 through 309.2) of PWD's Regulations.

Pursuant to the governing Charter provisions and PWD's regulations, on April 4, 2008, PWD notified Philadelphia City Council of its intent to file proposed changes in rates for water, wastewater, and storm water for the fiscal years 2009 through 2012. (*Id.* at 89a.) On May 5, 2008, PWD filed proposed amendments to Chapter 3 of PWD's Regulations, along with supporting documentation, with the City's Department of Records (Proposed Regulations). (*Id.* at 89a.) PWD requested a two-phase implementation of the Proposed Regulations—Phase One would address the stepped annual rate increases over a four-year period for fiscal years 2009 through 2012 (Rate Increases); and Phase Two would address the allocation of storm water costs to nonresidential customers. (*Id.* at 90a.)

Mayor Michael Nutter, City Council President Anna C. Verna, and City Controller Alan L. Butkowitz appointed a Hearing Officer to preside over rate hearings and to prepare a report for the Commissioner, summarizing the record and providing recommendations. (*Id.* at 90a.) In August 2008, the Hearing Officer held five (5) public hearings and three (3) days of technical hearings in connection with Phase One of the 2008 rate proceedings. (*Id.* at 90a–91a.) On October 7, 2008, the Hearing Officer issued a recommended decision to the Commissioner on the Rate Increases. (*Id.* at 124a.) He recommended approval of rate increases for fiscal years 2009 and 2010, albeit at lower levels than what PWD requested, but recommended that consideration of proposed increases for fiscal years 2011 and 2012 be delayed. Both PWD and Public Advocate filed exceptions to the Hearing Officer's recommendation.

On October 21, 2008, the Commissioner issued his Rate Determination on the Rate Increases (Rate Determination), rejecting in part the Hearing Officer's recommendation. Relevant for purposes of this appeal are the Commissioner's decisions to grant a greater rate increase for fiscal year 2010 and to also grant rate increases for fiscal years 2011 and 2012. (*Id.* at 118a.) On October 21, 2008, the Commissioner issued revised regulations designed to implement the revenue requirement increases set forth in his Rate Determination (Final Regulations). (*Id.*)

On October 27, 2008, Public Advocate requested reconsideration of the Rate Determination with respect to each of the four (4) years included in PWD's filing. (*Id.* at 194a.) The Final Regulations became effective November 1, 2008, for the City's fiscal years 2009 through 2012. (*Id.* at 2a.) On November 3, 2008, the Commissioner denied Public Advocate's request for reconsideration. (*Id.* at 201a.)

Public Advocate's complaint sets forth causes of action for declaratory and injunc-

---

3. Under Article II, Chapter 2 of the Charter, all legislative acts of the City Council must be by *ordinance*. In Sections 13–101 and 13–201 of the Philadelphia Code, the City Council, by ordinance, established the standards that PWD must apply in setting water and sewer rates.

tive relief under the trial court's original jurisdiction. In seven separate counts, Public Advocate challenges the methodology and analysis that the Commissioner employed in his Rate Determination, claiming that both violated the governing standards set by City Council and were not supported by evidence. Public Advocate seeks a court order declaring invalid the portion of the Final Regulations that authorize rate increases for fiscal years 2010, 2011, and 2012 and enjoining Appellees from implementing those portions of the Final Regulations. (*Id.* at 46a–47a.)

On January 22, 2010, Appellees filed preliminary objections with the trial court directed to all of the counts of Public Advocate's complaint. (R.R. at 208a.) In their first preliminary objection, Appellees claimed that Public Advocate failed to comply with rules of court (Pa. R.C.P. No. 1028(a)(2)). Specifically, they claimed that Public Advocate's action is governed by Chapter 15 of the Pennsylvania Rules of Appellate Procedure (Appellate Rules). Under those rules, Appellees claimed that Public Advocate was required to file a petition for review (and not a complaint) with the trial court within thirty (30) days of the issuance of the Rate Determination. Because Public Advocate did not file a timely petition for review under Chapter 15 of the Appellate Rules, Appellees requested that the trial court dismiss the complaint with prejudice.

In their second preliminary objection, Appellees again relied on Chapter 15 of the Appellate Rules. They claimed that Chapter 15 is the *exclusive* procedure to challenge governmental determinations. Because this procedure provides an adequate remedy at law, Appellees argued that the trial court lacks jurisdiction to grant Public Advocate the relief it seeks in equity. The fact that Appellees failed to

timely appeal the Rate Determination under Chapter 15 does not, according to Appellees, "create a special right to equitable relief." (R.R. at 212a.)

In their third preliminary objection, Appellees appear to have raised a demurrer (Pa. R.C.P. No. 1028(a)(4)). Appellees noted that Public Advocate's suit is directed to the portion of the Rate Determination for fiscal years 2010, 2011, and 2012. The demurrer, however, was directed toward a hypothetical alternative claim: "*If* Plaintiffs seek, in the alternative, prospective relief applicable to future rate proceedings, they are requesting an advisory opinion, rather than an adjudication of an actual controversy." (R.R. at 212a (emphasis added).) Appellees contended that it is inappropriate for Public Advocate to seek a declaratory judgment with respect to future rate proceedings. Thus, they urged the trial court to dismiss the complaint. (*Id.* at 213a.)

In their final preliminary objection, Appellees contended that the trial court lacked jurisdiction because Public Advocate failed to name as parties all constituencies that may have an interest in the outcome of the litigation. Citing to Section 7540 of the Declaratory Judgments Act,[4] which provides that "all persons shall be made parties who have or claim any interest which would be affected by the declaration," Appellees claimed that Public Advocate does not represent all segments of PWD's customer base, including some entities that participated in the ratemaking proceedings. Appellees alleged specifically that "institutional customers" disagree with Public Advocate's position in this litigation. (R.R. at 213a.) Because Public Advocate failed to join all parties that would have an interest in the litigation, Appellees argued that the action must be dismissed for lack of jurisdiction. (*Id.* at 214a.)

---

4. 42 Pa.C.S. § 7540.

By Order dated May 12, 2010, the trial court dismissed Public Advocate's complaint. (*Id.* at 238a.) Public Advocate filed a timely appeal with this Court. By Order dated June 24, 2010, the trial court directed Public Advocate to file a statement of matters complained of on appeal pursuant to Pa. R.A.P.1925(b). (*Id.* at 250a.) Public Advocate filed its statement, and the trial court thereafter issued an opinion in support of its dismissal order on August 10, 2010. In essence, the trial court adopted entirely Appellees' arguments in their four preliminary objections, dismissing the complaint on those grounds.

On appeal,[5] Public Advocate first argues that the trial court erred in dismissing its complaint for failure to comply with Rules 1502 and 1512 of the Pennsylvania Rules of Appellate Procedure (Appellate Rules). Second, Public Advocate argues that it properly brought its action under the trial court's original jurisdiction because PWD rate proceedings do not produce appealable adjudications. As a result, Public Advocate did not have an adequate remedy at law available other than to file an equity action in the trial court's original jurisdiction. Third, Public Advocate argues that the trial court erred in dismissing its complaint on the basis that it sought an impermissible advisory opinion. Finally, Public Advocate argues that the trial court erred in dismissing Public Advocate's complaint for lack of jurisdiction due to the failure to join indispensable parties.

## II. DISCUSSION

### A. Dismissal of Complaint as an Untimely Appeal (First Preliminary Objection)

In dismissing the complaint as untimely, the trial court relied exclusively on Rules 1502 and 1512 of the Appellate Rules.[6] As the name suggests, the Appellate Rules "govern practice and procedure in the Supreme Court, the Superior Court and the Commonwealth Court, including . . . the procedure for direct review in such courts of determinations of government units." Pa. R.A.P. 103; *Stout v. Universal Underwriters Ins. Co.*, 491 Pa. 601, 605, 421 A.2d 1047, 1049 (1980) (noting that Appellate Rules "were adopted to insure the orderly and efficient administration of justice at the *appellate* level" (emphasis added)). Chapter 15 of the Appellate Rules addresses specifically judicial review of governmental determinations by an "appellate court" of this Commonwealth, which is expressly defined to include only the Supreme Court, Superior Court, and Commonwealth Court. Pa. R.A.P. 102. Based on the foregoing, this Court has consistently held that Chapter 15 of the Appellate Rules does not, by its own

---

5. Our review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. *Petty v. Hosp. Serv. Ass'n of Northeastern Pa.*, 967 A.2d 439, 443 n. 7 (Pa.Cmwlth.2009), *appeal granted in part*, 606 Pa. 114, 995 A.2d 873 (2010). "In reviewing preliminary objections, all well pleaded relevant and material facts are to be considered as true, and preliminary objections shall only be sustained when they are free and clear from doubt." *Id.* (citation omitted). "Such review raises a question of law as to which our standard of review is *de novo* and

our scope of review is plenary." *Id.* (citation omitted).

6. Rule 1502 provides, in pertinent part, that "[a] petition for review is the exclusive procedure for this court to conduct judicial review of a government unit's determination." Rule 1512 provides, in pertinent part, that "[a] petition for review of a quasijudicial order, or an order appealable under 42 Pa.C.S. § 763(b) (awards of arbitrators) or under any other provision of law, shall be filed with the prothonotary of the appellate court within 30 days after the entry of the order."

terms, apply to appeals to the courts of common pleas. *See, e.g., Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1033 (Pa. Cmwlth.2011); *Smith v. Springfield Twp. Bd. of Supervisors*, 787 A.2d 1112, 1115 n. 2 (Pa.Cmwlth.2001); *McNeilis v. Commonwealth, Dep't of Transp.*, 119 Pa. Cmwlth. 272, 546 A.2d 1339, 1341 (1988).

We have recognized, however, that a trial court may adopt by local rule all or a portion of the Appellate Rules and thereby make them applicable to proceedings in the trial court. *See Scott v. Bristol Twp. Police Dep't*, 669 A.2d 457, 459 (Pa. Cmwlth.1995). The Court, however, is not aware of a local rule of the Court of Common Pleas of Philadelphia County adopting Chapter 15 of the Appellate Rules, and neither the trial court nor Appellees cite to any such local rule. Accordingly, we must conclude that the trial court erred in dismissing Public Advocate's complaint as untimely under Rules 1502 and 1512 of the Appellate Rules.[7]

**B. Dismissal of Complaint Because of Adequate Remedy at Law in the Nature of an Appeal (Second Preliminary Objection)**

■ We next address the trial court's conclusion that it properly dismissed this lawsuit seeking declaratory and injunctive relief because Public Advocate had an adequate and available remedy at law. The foundation of the trial court's decision is its belief that Public Advocate had a right to appeal the Rate Determination and the subsequent Final Regulations to the trial court under Chapter 15 of the Appellate Rules. As stated above, however, Chapter 15 does not apply to appeals of local government actions to the courts of common pleas. Appellees also fail to cite to any governing statute or local ordinance authorizing appeals to the trial court from PWD ratemaking decisions.

We also must take issue with how the trial court and Appellees have phrased this particular preliminary objection. The General Assembly long ago rejected the premise that a court may refuse to consider a request for declaratory relief where there is an available alternative legal, equitable, or statutory remedy. 42 Pa.C.S. §§ 7537, 7541(b); *see Kowenhoven v. Cnty. of Allegheny*, 587 Pa. 545, 560, 901 A.2d 1003, 1012–13 (2006); *Myers v. Dep't of Revenue*, 55 Pa.Cmwlth. 509, 423 A.2d 1101, 1103 (1980). Nonetheless, as the Supreme Court recognized in *Kowenhoven*, the General Assembly did expressly

---

7. During oral argument, Appellees argued for the first time that Public Advocate's action in the trial court was also, or alternatively, untimely under Section 5571.1 of the Judicial Code, 42 Pa.C.S. § 5571.1. Appellees did not raise this argument with the trial court, and they did not identify this statutory section in their brief to this Court as an alternative ground on which the Court can and should affirm the trial court. This Court is loathe to consider any arguments raised by the parties for the first time during oral argument on appeal. We have, nonetheless, considered the argument and reject it. Section 5571.1 provides, in pertinent part, that "[t]his section shall apply to any appeal raising questions relating to an alleged defect in the process of or procedure for enactment or adoption of any *ordinance, resolution, map or similar action of a political subdivision.*" (Emphasis added.) We interpret Section 5571.1 as applying only to legislative acts of political subdivisions. The City Council is the legislative branch of the City government and, under Article II, Chapter 2 of the Charter, all legislative acts of the City Council must be by *ordinance*. This lawsuit, however, is not a challenge to a legislative act of the City Council; rather, the question before the trial court in this action is the validity of a regulation promulgated by PWD through its Commissioner—an executive/administrative function of the City under the Charter. Accordingly, Section 5571.1 does not apply to the challenge in this case.

exempt from the scope of the Declaratory Judgments Act any "[p]roceeding involving an appeal from an order of a tribunal." 42 Pa.C.S. § 7541(c)(3).

Thus, resolution of this issue comes down to the question of whether Public Advocate *could* appeal the Rate Determination and subsequent Final Regulations to the trial court. Though this Court has on occasion reviewed trial court decision involving actions by PWD, the specific question of the trial court's jurisdiction in such cases (*i.e.*, original or appellate) was not before us in those cases. In *Consumer Education and Protective Association International, Inc. v. Philadelphia Water Department Commissioner*, 133 Pa. Cmwlth. 148, 575 A.2d 160 (1990), *aff'd*, 528 Pa. 600, 600 A.2d 189 (1992) (*CEPA I*), the trial court dismissed an "appeal" from a PWD rate determination for lack of standing. On appeal, this Court reversed the trial court's dismissal for lack of standing, but nonetheless affirmed the rate determination at issue. This Court's opinion, however, does not address the question of whether the trial court properly treated the matter as an "appeal," presumably because the parties did not raise the issue.

We came close to addressing this question in *Public Advocate and Consumers Education and Protective Association v. City of Philadelphia*, 662 A.2d 686 (Pa. Cmwlth.1995) (*CEPA II*). In that case, the public advocate filed a complaint in equity in the trial court, seeking to enjoin a rate determination by the Water Commissioner. Among the issues raised in the pleading, the public advocate challenged a portion of the rate determination that would transfer excess interest earnings to the City's General Fund. The trial court treated the matter as an appeal from the rate determination. It remanded the matter to the Water Commissioner to issue a revised rate determination that complied with PWD's regulations. *CEPA II*, 662 A.2d at 688 & n. 3. The trial court, however, determined that the public advocate waived the challenge to the interest transfer because he failed to raise it in the ratemaking proceedings before the Water Commissioner. *Id.* at 688.

On appeal, we addressed the merits of the interest transfer challenge and concluded that the transfer was not illegal. *Id.* at 688–90. We did not, however, address the waiver question:

The Public Advocate acknowledges that it did not raise at the rate hearings its challenge to the transfer of excess interest earnings. The Public Advocate asserts that its suit before the trial court was not an appeal of the rate determination but an original action in equity, therefore, not implicating the doctrine of waiver. The trial court heard evidence relating to the Public Advocate's request for an injunction, including testimony relating to the excess interest transfer. Although the trial court referred to that evidence in its discussion of the merits of the Public Advocate's claim, the trial court deemed the action an appeal from the rate determination and limited its review to the record developed before the agency. The Public Advocate's Second Amended Complaint, which apparently contains the relevant cause of action, is not contained in either the reproduced record or the original record. *We cannot, therefore, conclusively determine whether the cause of action at issue was in the nature of an appeal or an original action.*

*Id.* at 690 (emphasis added) (citations to record omitted).

Accordingly, neither *CEPA I* nor *CEPA II* resolve the question that is now before the Court—namely, whether challenges to PWD rate determinations lie in the trial

court's appellate jurisdiction. We, therefore, must address the issue.

The appellate jurisdiction of the courts of common pleas over government agencies is set forth in Section 933 of the Judicial Code, 42 Pa.C.S. § 933. This section vests jurisdiction in the courts of common pleas to hear appeals from specified Commonwealth agencies in certain types of cases and appeals from statutory arbitration awards between an employee and a local government agency. Section 933(a)(1), (b). In addition, Section 933(a) vests appellate jurisdiction in the courts of common pleas in the following matters:

> (2) Appeals from government agencies, except Commonwealth agencies, under Subchapter B of Chapter 7 of Title 2 (relating to judicial review of local agency action) or otherwise.

> (3) Appeals jurisdiction of which is vested in the courts of common pleas by any statute hereafter enacted.

■■ As noted above, neither Appellees nor the trial court cite to any governing statute or local ordinance that authorizes appeals to the trial court from PWD ratemaking decisions. What we are left with, then, is the Local Agency Law, 2 Pa.C.S. §§ 751–754. "Under the Local Agency Law, local administrative actions *that constitute adjudications* are subject to review in the court of common pleas under § 933(a)(2)." *Pa. Gaming Control Bd. v. City Council of Philadelphia*, 593 Pa. 241, 256 n. 5, 928 A.2d 1255, 1264 n. 5 (2007) (emphasis added). "Adjudication" is defined as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101. "If, however, the agency action does not affect the rights of the parties, but only affects the interest of the public in general, then the action will not be deemed an adjudication." *LaFarge Corp. v. Com. Ins. Dept.*, 690 A.2d 826, 833 (Pa.Cmwlth.1997), *rev'd on other grounds*, 557 Pa. 544, 735 A.2d 74 (1999).

Public Advocate argues that because PWD's ratemaking procedures are fact-findings and regulatory actions, they do not constitute appealable adjudications. Accordingly, the only available avenue to challenge the validity of PWD rate increases is an action addressed to the trial court's original jurisdiction under Section 931(a) of the Judicial Code, 42 Pa.C.S. § 931(a).[8]

"Not every action of an administrative agency is an adjudication." *Fricchione v. Dep't of Educ.*, 4 Pa.Cmwlth. 288, 287 A.2d 442, 443 (1972). Indeed, we have held that the Local Agency Law (a subset of the Administrative Agency Law) "does not afford review of actions of governmental bodies which are not adjudications or judicial in nature." *Manheim Twp. Sch. Dist. v. State Bd. of Educ.*, 1 Pa.Cmwlth. 627, 276 A.2d 561, 565 (1971). The question, then, is whether PWD's rate determinations are quasi-judicial or quasi-legislative.

We touched on this question *CEPA I*. In the context of determining whether water customers were entitled to due process in

---

**8.** Section 931(a) of the Judicial Code provides, in pertinent part:

> Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

water rate proceedings, we affirmed the trial court decision holding that the hearings and processes leading up to a Water Commissioner's rate determination were investigatory rather than adjudicatory. In reaching that conclusion, we explained:

> ... [T]here is a significant body of federal caselaw on this subject. Federal courts have consistently held that ratepayers do not have a sufficient property interest in rates to invoke the procedural due process protections of the Fourteenth Amendment to the United States Constitution. ...
>
> An examination of Pennsylvania caselaw leads to the same conclusion that ratepayers do not have a property interest in rates and ratemaking. ...
>
> ....
>
> We agree with the City that in this case the proceedings carried out by the Hearing Examiner were for the purpose of gathering information to be considered by the Water Commissioner in determining whether a rate increase was necessary. As this Court concluded in *Pennsylvania State Association of Township Supervisors v. Insurance Department*, 50 Pa.Commonwealth Ct. 204, 412 A.2d 675 (1980) the hearings in this case were "by definition" investigatory rather than adjudicatory in nature. Because we conclude that ratepayers have no property right in rates and ratemaking and that the procedure conducted by the Hearing Examiner was investigatory rather than adjudicatory, no due process rights attached.

*CEPA I*, 575 A.2d at 163.

In addition, this Court has rejected the contention that an agency's promulgation of a regulation is an appealable adjudication. *See Laurel Lake Assoc., Inc. v. Pa. Fish & Boat Comm'n*, 710 A.2d 129 (Pa. Cmwlth.1998); *Ins. Co. of N. Am. v. Com. Ins. Dept.*, 15 Pa.Cmwlth. 462, 327 A.2d

411 (1974). In so doing, we noted that adjudications, by nature, determine rights and obligations of the particular parties before the agency in a particular proceeding. Regulations, by contrast, are quasi-legislative activities of an agency that have more general application.

Based on the foregoing, the Court is satisfied that PWD's ratemaking process, as set forth in the Charter and PWD's Regulations, is quasi-legislative and not quasi-judicial. Here, the dispute is over the Commissioner's Rate Determination and subsequent promulgation of the Final Regulations, amending the PWD's Regulations establishing water rates in the City of Philadelphia for all PWD customers. The challenged actions of the Commissioner and PWD are not particular to the parties that chose to participate in the ratemaking process. The resulting Rate Determination and Final Regulations, therefore, are not adjudications and thus are not appealable under the Local Agency Law within the trial court's *appellate* jurisdiction under Section 933(a)(2) of the Judicial Code.

Having determined that Public Advocate did not have an avenue to challenge the validity of the Rate Determination and Final Regulations in the trial court's appellate jurisdiction under the Local Agency Law, we find that the trial court erred in dismissing this action in its original jurisdiction—which appears to be the *only* venue where this challenge can be raised and addressed.

## C. Dismissal of Complaint Because It Seeks an Advisory Opinion (Third Preliminary Objection)

 The purpose of the Declaratory Judgments Act "is to settle and afford relief to any person from uncertainty and insecurity with respect to rights, status and legal relations affected by a statute."

*Chester Upland Sch. Dist. v. Cmwlth.*, 90 Pa.Cmwlth. 464, 495 A.2d 981, 983 (1985). "[I]t is well settled that declaratory judgments are not to be entered in anticipation of events that may never occur." *Yarmoski v. Lloyd*, 110 Pa.Cmwlth. 97, 531 A.2d 1169, 1171 (1987). A plaintiff seeking relief in anticipation of events that may never occur, based upon a hypothetical future occurrence, has not yet been adversely affected by the alleged violations and declaratory judgment is not an appropriate remedy to determine rights in anticipation of events that may never occur. *Independence Blue Cross v. Pa. Ins. Dep't.*, 802 A.2d 715, 719 (Pa.Cmwlth.2002). To bring an action, the plaintiff's interest "must be a direct, substantial and present interest, as contrasted with a remote or speculative interest." *Id.* To require otherwise would result in this Court issuing advisory opinions, which is beyond our jurisdiction to do. *Rendell v. Pa. State Ethics Comm'n.*, 938 A.2d 554, 559 (Pa.Cmwlth.2007), *reversed and remanded on other grounds*, 603 Pa. 292, 983 A.2d 708 (2009).

Here, Public Advocate asked the trial court to declare that the Rate Determination and Final Regulations were invalid to the extent that they authorized increased water rates for fiscal years 2010, 2011, and 2012. Public Advocate also asked the trial court to grant an injunction, enjoining the PWD from enforcing increased rates as set forth in the Final Regulations for fiscal years 2010, 2011, and 2012. The trial court concluded that because the next rate case (for fiscal year 2013) had not yet been formulated with a rate period of one or multiple years, the trial court would have to anticipate the PWD's next rate proceedings to make a determination as to Public Advocate's request and, as such, would yield a purely advisory decision.

We find that the trial court misconstrued both the complaint and Appellees' preliminary objection. The preliminary objection posed only a hypothetical—*i.e., if* Public Advocate was seeking prospective relief with respect to *future* rate proceedings, then the trial court must dismiss the lawsuit as seeking an improper advisory opinion. We do not construe the complaint as seeking such relief. Rather, Public Advocate's complaint seeks invalidation of the issued Rate Determination and Final Regulations stemming from an already concluded ratemaking proceeding for fiscal years 2010 through 2012. That some of these rates have not yet gone into effect is of no consequence, as the Final Regulations implementing them are currently in force.[9] Accordingly, the trial court erred in dismissing the complaint as seeking an impermissible advisory opinion.

### D. Dismissal of Complaint for Failure to Join Necessary Parties (Fourth Preliminary Objection)

■ The trial court held that it lacked jurisdiction over the complaint because Public Advocate failed to join necessary and indispensable parties. The trial court specifically relied on the requirement in Section 7540(a) of the Declaratory Judgments Act, which provides that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

9. Similarly, that some, but not all, of the rates have already gone into effect does not persuade this Court to affirm the trial court's dismissal of Public Advocate's validity challenge on the alternative ground of mootness, as Appellees urge in their brief on appeal. This, however, does not foreclose Appellees from arguing below that certain relief Public Advocate seeks in its complaint, due to the passage of time, is no longer available.

The trial court reasoned that Public Advocate represents only a segment of consumers affected by the Rate Determination and Revised Regulation. Indeed, the trial court noted: "All customers do not agree with the position of [Public Advocate] with regard to the appropriate time horizon for setting rates. Institutional customers, for example, have indicated that rates set over multiple test years are helpful for budgeting and planning purposes." (Trial court Opinion at 9.) In essence, the trial court held that because Public Advocate failed to join all customers of PWD who disagree with Public Advocate's position in the complaint, Public Advocate's complaint is deficient under Section 7540 of the Declaratory Judgments Act. We disagree.

First, it must be noted that Appellees raised this objection by preliminary objection, accompanied by a notice to plead. The quote from the trial court's opinion above, which formed the basis of the trial court's decision sustaining the preliminary objection, is taken verbatim from paragraph 43 of the preliminary objections. (R.R. at 213a.) In its response to this paragraph, Public Advocate stated:

> After reasonable investigation, Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the averment. By way of further answer, the Commercial Customer Coalition, which filed extensive briefs in the phase of the case considering the revenue requirement and rate structure, took the position that the Rate Regulations should not cover rates beyond FY2010. Neither the Philadelphia Large Users Group nor Sunoco filed briefs in the phase of the case considering the revenue requirement for rate structure.

(*Id.* at 224a–25a (footnote omitted).) Pursuant to Pa. R.C.P. No. 1029(c), the trial court should have treated this response as a denial of Appellees' averment in paragraph 43, creating a disputed factual issue. The trial court, nonetheless, accepted Appellees' averment without resolving this factual dispute pursuant to Pa. R.C.P. No. 1028(c)(2) ("If an issue of fact is raised, the court shall consider evidence by deposition or otherwise."). In this regard, the trial court erred.

But even accepting this allegation as true, we disagree with the trial court's dismissal. Neither the trial court nor Appellees identify a particular person or entity that should have been made a party to the complaint. Instead, they identify general classes of individuals—(a) the residential customers that Public Advocate does not represent; (b) "institutional customers"; or (c) the PWD customers that simply disagree with Public Advocate's positions in this case. In their brief on appeal, Appellees identify yet another new, amorphous class of alleged indispensible parties—"non-residential customers." It seems wholly unreasonable to dismiss a plaintiff's complaint for failure to join alleged indispensible parties when the defendants cannot even identify with a reasonable level of specificity who these parties are and their particular and specific interests in the litigation, such that the plaintiff might even be able to identify them and join them as parties.

Moreover, the trial court applied an exceedingly rigorous standard in ruling on this preliminary objection. We are guided by our Pennsylvania Supreme Court's decision in *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566 (2003). We recently restated and applied *City of Philadelphia* in *HYK Construction v. Smithfield Township*, 8 A.3d 1009 (Pa. Cmwlth.2010). There, we recited the applicable standard in these situations:

In undertaking this inquiry, the nature of the claim and the relief sought must be considered....

While the Declaratory Judgments Act's joinder provision is mandatory, *it is subject to reasonable limitations.* For example, where a declaratory judgment as to the validity of a statute or ordinance is sought, it is impossible to join as parties every single person whose interests are affected by the statute or ordinance. Requiring the joinder of all such parties would undermine the litigation process and render the litigation unmanageable.... Where the interest involved is indirect or incidental, joinder may not be required.

*HYK Constr.*, 8 A.3d at 1015 (citations omitted) (emphasis added).

*City of Philadelphia* involved a validity challenge to a statute. The respondents in that case argued that this Court lacked original jurisdiction over the challenge because the petitioners failed to join "a wide array of parties." City of Phila., 575 Pa. at 581, 838 A.2d at 567.[10] "In essence, Respondents appear to contend that anyone whose interests may be affected by any aspect of the challenged legislation must be formally joined for jurisdiction to lie." *Id.* The Supreme Court rejected this premise, adopting the Wisconsin Supreme Court's construction of statutory language identical to that found in Section 7540(a) of the Declaratory Judgments Act:

> We do not construe the statute as requiring that where a declaratory judgment as to the validity of a statute or ordinance is sought, every person whose interests are affected by the statute or ordinance must be

made a party to the action. If it were so construed, the valuable remedy of declaratory judgment would be rendered impractical and indeed often worthless for determining the validity of legislative enactments, either state or local, since such enactments commonly affect the interests of large numbers of people. *Town of Blooming Grove v. City of Madison,* 275 Wis. 328, 81 N.W.2d 713, 717 (1957) (citing *White House Milk Co. v. Thomson,* 275 Wis. 243, 81 N.W.2d 725, (1957)).

*White House Milk Co.* involved a similar question within the context of a facial constitutional challenge to a state enactment. After expressing sentiments similar to those quoted above, the court concluded:

> Therefore, we construe [the relevant section of the Uniform Declaratory Judgments Act] as not requiring the joinder as parties, in a declaratory action to determine the validity of a statute or ordinance, of any persons other than the public officers charged with the enforcement of the challenged statute or ordinance. Such defendant public officers act in a representative capacity in [sic] behalf of all persons having an interest in upholding the validity of the statute or ordinance under attack.

We agree with the Wisconsin Supreme Court that requiring the participation of all parties having any interest which could potentially be affected by the invalidation of a statute would be impractical, for the reasons stated. Further, as such an interpretation would

---

**10.** The list is much more specific than what Appellees offer in this case. It included "the new Convention Center Authority board members, the four counties with new appointment powers relative to the Convention Center Authority, the Public Utility Commission, [the Pennsylvania Intergovernmental Cooperation Authority] and all of its bondholders, and the City's firefighters' and police officers' unions." *Id.*

result in an unwieldy judicial resolution process, it would run contrary to the Legislature's direction, as expressed in the text of the Declaratory Judgments Act, that the statute constitutes remedial legislation to be construed liberally so as to settle, and afford relief from, uncertainty relative to rights, status, and other legal relations.

*Id.* at 569–70, 838 A.2d at 583 (citation omitted) (alteration in original) (quoting *Town of Blooming Grove v. City of Madison*, 275 Wis. 328, 81 N.W.2d 713 (1957); *White House Milk Co. v. Thomson*, 275 Wis. 243, 81 N.W.2d 725 (1957)).

The rationale of the Supreme Court, though directed toward a validity challenge to legislation, extends naturally to validity challenges to local regulations. It would simply be impractical, if not impossible, for a party who seeks to challenge the validity of a local regulation or ordinance to identify and name as parties each and every person or entity who might disagree with the plaintiff's position. The more practical approach, which is more consistent with the purpose and remedial nature of the Declaratory Judgments Act, is to name as respondents those public officers who play a role in creating the challenged regulation or ordinance and/or enforcing the challenged regulation or ordinance. That is exactly what Public Advocate did in this case and, therefore, the complaint complied with Section 7540(a) of the Declaratory Judgments Act.

### III. *CONCLUSION*

For the reasons set forth above, the trial court erred in sustaining PWD's preliminary objections and dismissing the complaint. We, therefore, reverse the trial court's order and remand for further proceedings.

### *ORDER*

AND NOW, this 4th day of May, 2011, the order of the trial court, dated May 12, 2010, is hereby REVERSED. The matter is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.