# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jay Larry Moyer,                          :
                          Petitioner     :
                                          :
            v.                            :    No. 882 C.D. 2016
                                          :    SUBMITTED:  November 23, 2016
Public Utility Commission,               :
                          Respondent     :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                          **FILED:  March 13, 2017**


This case involves a long ongoing dispute between petitioner, Jay Larry Moyer, and his electric supplier, PPL Electric Utilities Corporation (PPL), and the Public Utility Commission (PUC).  Before us for disposition is Moyer's *pro se* petition for review of the final order of the PUC ruling on two consolidated complaints (2011 and 2014 complaints) that he filed against PPL (intervenor here).  Moyer challenged PPL's billing under a virtual net meter aggregation program for accounts associated with solar panels that he installed on a hillside approximately 600 yards from his farmhouse in Klingerstown, PA.

> In its brief, PPL explains the concepts involved as follows:
>
> Net metering enables customer-generators to use the electricity produced from their eligible alternative energy sources, such as solar panels, to offset all or a portion of their electric usage. The crediting is done

on a one-to-one basis: for every kilowatt-hour ("kWh") of electricity generated, one kWh of electricity is credited to the account up to the total amount of electricity used in the monthly billing period. *See* 52 Pa. Code § 75.13(c).

*\*\*\**

Under traditional net metering, such as a solar panel mounted on the roof of the customer's residence, the alternative energy system is wired directly with the customer's home or business. [T]he customer-generator has a single bidirectional meter that measures and records the flow of electricity in both directions, meaning that it runs forward when electricity is used and runs backward when electricity is generated to produce a single "net" meter read each month.

*\*\*\**

In contrast, meter aggregation enables a customer-generator to aggregate multiple locations for the purposes of net metering. (PPL St. No. 1, p. 7) These properties must be within two miles of the customer-generator's property and located within the electric utility's service territory. Two types of meter aggregation exist: (1) physical meter aggregation; and (2) virtual meter aggregation.

Under physical meter aggregation, the customer-generator connects the alternative energy source directly to the single meter at the customer's home or business. (PPL St. No. 1, p. 7) For example, solar facilities located in a field could be directly connected to the meter at a nearby residence by extending an electrical conductor/conduit between the solar facility and the residence. Physical meter aggregation functions like traditional net metering because the facilities are physically connected to a single bidirectional meter….

*\*\*\**

On the other hand, virtual meter aggregation "virtually" aggregates separate meters that are not physically connected. (PPL St. No. 1, p. 7) For example, the meter at a residence can be "virtually"

2

aggregated with the meter for a solar facility located 'in a nearby field without a physical connection to the residence. (PPL St. No. 1, p. 7) To accomplish this result, the electric utility measures the electricity used and generated at the meter for the generating facilities (such as Mr. Moyer's solar array) and aggregates that with the customer-generator's usage from the meter at his or her other property (such as Mr. Moyer's residence). Under this scenario, there are two different meters with two entirely different points of interconnection with the electric system: (1) a bidirectional meter at the generating facilities (referred to as the host account) to measure usage and generation of electricity; and (2) a standard meter at the other property (referred to as the satellite account) that measures the customer's electric usage…. Consequently, PPL Electric must [manually] virtually aggregate the generation and usage measured from the meter for the generating facilities with the usage measured from the meter for the customer's home or business.

(Brief for PPL at 9-12) (Record citations deleted).

The relevant procedural history of this case is as follows. In November 2011, Moyer filed a complaint against PPL alleging that he contacted it regarding the installation of solar panels on his property and that a representative inspected and approved them in March 2009.[1] He further alleged that for the period of April 2009 to February 2010, PPL failed to credit him for the electricity that was generated by those solar panels and delivered to PPL and that the checks that he had received since April 2010 lacked any accounting for the credits. Further, alleging that PPL failed to properly aggregate his accounts in accordance with the virtual-net metering provisions in its Net Metering for Renewable

---

[1] At that time, Moyer was represented by counsel. Since counsel's March 2012 notice of withdrawal, however, Moyer has been proceeding *pro se*.

Customer-Generators Rider, Moyer averred that PPL failed to credit him for all of the electricity generated by his solar panels since March 2009. Accordingly, Moyer requested that the PUC order PPL to apply virtual net meter aggregation to his two accounts, disclose all credits and/or payments that PPL made to him and, if necessary, fully reimburse him for the electricity generated.

In response, PPL acknowledged that for a discreet period it failed to aggregate the excess generation produced by the solar panels generated with the usage at Moyer's residence. It maintained, however, that it made payments to him for that excess generation and applied credits to his residential account. In any event, following failed mediation, Administrative Law Judge Cynthia Williams Fordham (ALJ) conducted an August 2012 evidentiary hearing at which time Moyer testified, presented two witnesses, and introduced twenty exhibits into the record, ten of which were admitted. PPL presented two witnesses and introduced ten exhibits, nine of which were admitted. In February 2013, the ALJ issued her initial decision dismissing the 2011 complaint.

In January 2014, the PUC vacated the ALJ's initial decision to the extent that she found that PPL properly credited Moyer for his solar generation. Concluding that the record was insufficient to make such a determination, the PUC remanded the case to the ALJ for further development of the record. In so doing, the PUC granted Moyer's petition to reopen the record to include the following additional information: (1) PPL to provide Moyer's actual data for the period of April 2009 to May 2013; and (2) Moyer to provide all of his monthly bills and statements for the period of April 2009 to January 9, 2014. Further, the PUC encouraged the parties to meet and attempt to resolve Moyer's concerns and

4

advised him that, if informal discussions with PPL did not result in a resolution, he could request further hearings.

In September 2014, before a second hearing could be held, Moyer filed a new complaint raising issues concerning the accuracy and content of PPL's billing processes for his virtual-net metering accounts and requesting that the PUC order PPL to develop and implement new billing procedures and processes for such accounts using a single bill for both accounts being virtually aggregated. In January 2015, the ALJ consolidated the 2011 and 2014 complaints.

At an April 2015 hearing, Moyer submitted his direct and surrebuttal testimony and proffered 267 additional exhibits, 179 of which were admitted into the record. PPL submitted rebuttal testimony and five additional exhibits, all of which were admitted into the record. In October 2015, the ALJ issued her initial decision on remand in which she (1) dismissed the 2014 complaint in its entirety; and (2) sustained the 2011 complaint to the extent that PPL was to compensate Moyer for credits earned for the electricity generated from his solar panels between May and December 2010, and that PPL permit Moyer to participate in its virtual-meter aggregation program, as earlier during the litigation it had agreed to do, subject to changes in PPL's tariffs or the applicable law, but dismissed the 2011 complaint in all other respects.

On May 19, 2016, the PUC entered its final opinion and order, adopting the ALJ's decision on remand, finding that PPL correctly billed and credited Mr. Moyer's accounts but modified that decision to require PPL to pay additional interest through the date of its order. Further, although the PUC opined that the accounts did not qualify for virtual-meter aggregation under the terms of PPL's tariff because he failed to show the existence of an independent, non-

5

generational load[2] at his generation facility, the PUC reiterated the order that Moyer be allowed to virtually aggregate his two accounts because PPL had agreed to a waiver of the load requirement in an effort to resolve the issues. *See* PUC's May 19, 2016, Opinion at 30 n.10, 38-39, 43, and 48.

In addition to Moyer's petition for review, we have the following three applications before us for disposition with the merits: (1) the PUC's November 1, 2016, application to strike the *amicus curiae* brief filed by Sunrise Energy, LLC, (Sunrise) via its principal and majority shareholder David N. Hommrich; (2) Moyer's October 20, 2016, application for relief, asserting, *inter alia*, that this Court's decision in *Sunrise Energy, LLC, v. FirstEnergy Corporation*, 148 A.3d 894 (Pa. Cmwlth. 2016) (*en banc*),[3] has immediate

---

[2] The regulation defining "virtual meter aggregation" provides:

> The combination of readings and billing for all meters regardless of rate class on properties owned or leased and operated by a customer-generator by means of the EDC's [electric distribution company] billing process, rather than through physical rewiring of the customer-generator's property for a physical, single point of contact. Virtual meter aggregation on properties owned or leased and operated by a customer-generator and located within 2 miles of the boundaries of the customer-generator's property and within a single electric distribution company's service territory shall be eligible for net metering.

52 Pa. Code § 75.12. An additional regulation then in effect, which the PUC asserts implicitly required an independent, non-generational load, provides that electric distribution companies shall offer net metering to customer-generators that generate electricity on the customer-generator's side of the meter. 52 Pa. Code § 75.13(a). The PUC asserts that its proposed rulemaking at Commission Docket L-2014-2404361, which has now been made part of its regulations at 52 Pa. Code § 75.13, makes explicit what was previously implied.

[3] On December 12, 2016, we denied the application of FirstEnergy Corporation and West Penn Power Company for reargument/reconsideration *en banc* of the *Sunrise* decision. On January 12, 2017, they filed a petition for allowance of appeal to our Supreme Court at No. 25 WAL Docket 2017.

6

implications for his case and that, pursuant thereto, the PUC's adjudication in his case is rendered null and void;[4] and (3) Moyer's November 23, 2016, application for relief asserting, *inter alia*, that the PUC's final proposed rulemaking on November 19, 2016, makes the issue of the independent-load requirement for virtual-meter aggregation ripe for review. For the reasons that follow, we grant the PUC's application to strike the purported *amicus curiae* brief, deny both of Moyer's applications for relief, and affirm the PUC's final order on the merits.

In considering the PUC's application to strike the purported *amicus curiae* brief filed by Mr. Hommrich on behalf of Sunrise, as joined by PPL, we note that, in addition to the untimeliness of the brief,[5] it does not appear as though Mr. Hommrich is an attorney licensed to practice law in the Commonwealth. In that regard, in *Moyer v. Public Utility Commission*, (Pa. Cmwlth. No. 336 C.D. 2016, filed July 26, 2016), wherein this Court granted the PUC's motion to quash Moyer's petition for review of a PUC final rulemaking order, we dismissed Sunrise as an intervenor due to Mr. Hommrich's failure to file a copy of the certificate of organization and docketing statement on file for Sunrise with the Department of State, Bureau of Corporations and Charitable Organizations, or to have a member of the Pennsylvania Bar enter an appearance on Sunrise's behalf. In light of

---

[4] This Court ruled that, "to the extent that the application raises the applicability of this court's recent decision in [*Sunrise Energy, LLC*], the application and the answer thereto will be treated as supplemental briefs." In addition, we ordered that, "[t]o the extent [Moyer] seeks any additional relief in his application, the application is denied." November 1, 2016, Commonwealth Court Order at 1.

[5] In an August 30, 2016, order rejecting Sunrise's initial August 23, 2016, brief for noncompliance with the Pennsylvania Rules of Appellate Procedure, this Court directed that, unless a conforming brief was filed on or before September 29, 2016, Sunrise would be precluded from filing a brief. Our docket entries indicate that Sunrise's brief was filed on September 30, 2016.

Sunrise's recent inability and/or failure to comply with this Court's directive and the fact that Mr. Hommrich represents only that he is principal and majority shareholder of the company, which is not represented by counsel, we grant the PUC's application to quash Sunrise's brief. *See* 20 West's Pa. Prac., Pa. Appellate Practice § 102.11 at 281 (2015) (providing that a corporation must be represented by counsel and that the failure to have such counsel may result in dismissal). We turn now to Moyer's October 20, 2016, application for relief and the effect of this Court's decision in *Sunrise Energy, LLC*.

In *Sunrise Energy, LLC*, solar power generator Sunrise initiated its complaint in the court of common pleas against one public utility/electric distribution company (West Penn Power Company) and one non-public utility (FirstEnergy Corporation), alleging a breach of contract and seeking declaratory relief arising from a contract dispute over West Penn Power Company's purchase of excess energy from Sunrise. The defendants filed preliminary objections based on primary jurisdiction, seeking dismissal and/or transfer of certain counts to the PUC. After common pleas dismissed the preliminary objections and permitted an interlocutory appeal, which this Court granted, we affirmed the court's order, ruling that neither the doctrine of exclusive nor that of primary jurisdiction required it to transfer certain issues to the PUC. Specifically, we held that common pleas had jurisdiction to decide eligibility for net metering pursuant to the Alternative Energy Portfolio Standards Act (AEPS), Act of November 30, 2004, P.L. 1672, *as amended*, 73 P.S. §§ 1648.1-1648.8, and that it did not err in refusing to cede jurisdiction to the PUC. Contrary to Moyer's position herein, *Sunrise Energy, LLC*, does not affect the jurisdictional validity of the PUC's order in this case.

8

In the present case, Moyer through his then counsel, filed a complaint with the PUC challenging PPL's billing procedures and its practices for virtual-meter aggregation and PPL's assignment, based on its tariff, of its commercial GS-1 rate to Moyer's host (solar panel) account. Before the PUC entered its final order, the issue of Moyer's eligibility for virtual meter aggregation became moot when PPL agreed to allow Moyer to participate in the program. At a minimum, the remaining issues were within the PUC's jurisdiction. *See* Section 701 of the Public Utility Code, 66 Pa. C.S. § 701 (providing, in pertinent part, that "any person . . . may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission") and *PPL Elect. Util. Corp. v. Pa. Pub. Util. Comm'n*, 912 A.2d 386, 400 (Pa. Cmwlth. 2006) (holding that the PUC is responsible for regulating utility rates and evaluating tariffs over which it has the particular expertise). *Sunrise Energy, LLC*, therefore, is distinguishable from the present case and the PUC had jurisdiction to decide the issues before it. Accordingly, we deny Moyer's October 20, 2016, application for relief.

Finally, in his November 23, 2016, application for relief, Moyer asserted, *inter alia*, that the PUC's final proposed rulemaking on November 19, 2016 (*see supra* n.2), makes his challenge to the independent-load requirement for virtual-meter aggregation ripe for review. However, as noted above, the PUC ordered that Moyer continue to be allowed to participate in net metering because of PPL's waiver of the independent-load requirement in Moyer's case. Thus, the instant appeal does not encompass the issue of whether Moyer is subject to the independent-load requirement, nor is the final rulemaking (which occurred more

than a year after the record closed in this case) at issue here.[6] At any rate, a final rulemaking order is not an appealable order. *Moyer v. Pub. Util. Comm'n*, (Pa. Cmwlth. No. 336 C.D. 2016, filed July 26, 2016) [citing *Popowsky v. Pub. Util. Comm'n*, 701 A.2d 277, 278-79 (Pa. 1997) and *Pub. Advocate v. Brunwasser*, 22 A.3d 261, 269 (Pa. Cmwlth. 2011)]. Accordingly, we will not consider it here.

Turning to the merits of Moyer's petition for review, the cognizable issues are follows:[7] (1) whether the PUC erred in determining that PPL's manual billing procedures for its virtual-meter aggregation customers were sufficient; (2)

---

[6] Mindful that it directed PPL in a January 2014 order to continue permitting Moyer to participate in PPL's virtual-meter aggregation program despite the fact that there is no independent, non-generational load at his solar facility, the PUC observed as follows regarding Moyer's waiver:

> [W]hile future changes in the law or in PPL's tariff may alter the waiver PPL has agreed to, our *AEPS [Alternative Energy Portfolio Standards] Final Rulemaking Order* proposed additional clarifying language to reinforce the already existing provisions of our AEPS Regulations which requires a customer-generator to have independent, non-generational load to be eligible to participate in net metering. Therefore, our issuance of the *AEPS Final Rulemaking Order* does not disturb our prior direction that PPL permit [Moyer] to participate in its virtual meter aggregation program, which we reinforce here.

May 19, 2016, PUC's Opinion at 43 n.14. Accordingly, because the independent-load requirement at 52 Pa. Code § 75.13 is not being applied to Moyer's facility, its validity is not properly before this Court, and we must decline Moyer's request that we issue an advisory opinion. In that regard, "an actual case or controversy must be extant at all stages of review. . . ." *Pap's A.M. v. City of Erie*, 812 A.2d 591, 600 (Pa. 2002).

[7] It is well established that an appellate court may only consider a question on appeal that was previously raised before the PUC. Section 703(a) of the Administrative Agency Law, 2 Pa. C.S. § 703(a); *Wheeling & Lake Erie Ry. Co. v. Pa. Pub. Util. Comm'n*, 778 A.2d 785, 794 (Pa. Cmwlth. 2001). All other issues are waived. Accordingly, to the extent that Moyer has raised issues that were not raised before the PUC, we decline to consider them on appeal. Moreover, to the extent that Moyer attempts to raise issues concerning the independent-load requirement, we also decline to consider them on appeal. *See supra* n. 6.

whether there is substantial evidence to support the PUC's finding that PPL's records for Moyer's accounts do not contain inconsistencies and irregularities or reflect that there are omissions; and (3) whether the PUC erred in determining that PPL followed the law and its tariff in assigning the host (solar panel) account PPL's commercial GS-1 rate.[8] We turn first to the PUC's determination regarding PPL's manual billing procedures.

In determining that PPL could use manual billing and was not required to implement an automated billing process for its virtual-meter aggregation program, the PUC construed the Public Utility Code and its regulations as well as the AEPS, and determined that nothing mandated that PPL implement an automated billing process and nothing prohibited PPL from using a manual billing system. In addition, the PUC took into consideration the evidence that PPL presented regarding the relatively small number of customers enrolled in virtual-meter aggregation, ninety eight, and the cost for upgrading PPL's billing system. The PUC concluded, therefore, that manual billing was sufficient and that there was nothing requiring PPL to implement automated billing.[9] PUC's May 19, 2016, Opinion at 22-24. We conclude that the PUC did not err in rendering that determination. *See City of Phila. v. Pa. Pub. Util. Comm'n*, 829 A.2d 1241, 1243 (Pa. Cmwlth. 2003) (holding that the PUC's interpretation of a utility law and

---

[8] Pertinent here, we are limited on appeal to determining whether an error of law occurred and whether necessary findings of fact are supported by substantial evidence. *Popowsky v. Pa. Pub. Util. Comm'n*, 910 A.2d 38, 48 (Pa. 2006). Substantial evidence means more than a mere trace of evidence or suspicion of the existence of a fact sought to be established. *Norfolk & W. Ry. Co. v. Pa. Pub. Util. Comm'*n, 413 A.2d 1037, 1047 (Pa. 1980).

[9] In this regard, we note the PUC's acknowledgment of PPL's efforts to provide its customers enrolled in virtual-meter aggregation with the tools to better understand their bills. PUC's May 19, 2016, Opinion at 28.

regulations is to be given great deference).  We turn now to addressing whether there is substantial evidence for the PUC's determination regarding the accuracy and adequacy of PPL's records for Moyer's accounts.

In addressing the sufficiency of PPL's records for Moyer's accounts, the PUC's relied on PPL's Exhibit APC-5.  In reviewing that exhibit, the PUC noted that PPL provided a description for each of the columns and an explanation as to how it calculated and applied credits for Moyer's excess generation.  PUC's May 19, 2016, Opinion at 29.  In addition, the PUC noted that it also considered Moyer's Exhibits JLM 101-170 (solar/host account bills) and 202-267 (satellite/residential account bills) and concluded that they "corroborate[d] PPL's assertion that it demonstrated how its tabulation of [Moyer's] actual data for the two accounts since 2009 reconciles with [his] bills, and that it explained any alleged inconsistencies in [his] bills." *Id*.  The PUC stated that, "[t]his affirms the ALJ's conclusion that [Moyer] was appropriately billed for his usage and credit for his generation." *Id*.

Moreover, beyond generally asserting that PPL's tabulation reflecting specific actual information on a monthly basis did not correspond to the actual bills mailed to him, Moyer has failed to identify any evidence in the record indicating that PPL's records were inconsistent or irregular, or reflect that there may have been omissions.  In that regard, the party seeking affirmative relief from the PUC bears the burden of proving its claims by competent evidence. *Milkie v. Pa. Pub. Util. Comm'n*, 768 A.2d 1217, 1220 (Pa. Cmwlth. 2001).  Further, even where it exists, evidence that supports a different result than that reached by the PUC is irrelevant as long as the record contains substantial evidence to support its decision. *Wheeling & Lake Erie Ry. Co. v. Pa. Pub. Util. Comm'n*, 778 A.2d 785,

794-95 (Pa. Cmwlth. 2001). Accordingly, we conclude that the evidence that the PUC relied upon constituted substantial evidence to support its determination.

Finally, in rejecting Moyer's argument that the host account should be assigned PPL's residential RS rate, the PUC acknowledged that there was no evidence indicating that he was using his solar facility to engage in commercial activity and that there was nothing in the AEPS or PUC regulations explicitly mandating that a residential customer-generator electing virtual-meter aggregation receive service under a commercial rate schedule for his host account. PUC's May 19, 2016, Opinion at 35. Nonetheless, the PUC determined that, "the current terms of PPL's Commission-approved tariff simply do not permit [Moyer's] solar facility to be billed under PPL's Rate Schedule RS nor does the construct of [his] virtual net metering impose the same burdens on or uses of PPL's infrastructure as do physical meter aggregation customers." *Id*.

Specifically, in support of its determination that Moyer did not meet PPL's tariff specifications for its residential RS rate applicable to single-phase electric service, the PUC reviewed the relevant criteria:

> (a) A single family dwelling and detached buildings when the detached buildings are served at the customer's expense through the same meter as the single family dwelling;
>
> (b) A separate dwelling unit in an apartment house;
>
> (c) A single farm dwelling and general farm uses when general farm uses are served at the customer's expense through the same meter as the single farm dwelling;
>
> (d) A building previously wired for single meter service which is converted to not more than 8 separate dwelling units served through one meter.

*Id*. at 36. In concluding that Moyer's solar facility did not meet the above criteria, the PUC observed that Moyer's solar facility was "simply an array of mounted

13

solar panels located several hundred yards away from [his] residence[,]" that he "did not use it for shelter, dining, sleeping, or cooking[,]" and that it was served by a separate meter from the one located at his residence. *Id.*

Moreover, in determining that Moyer was properly subject to PPL's commercial rate, the PUC reviewed PPL's tariff for rate schedule GS-1, which provides, in relevant part, that it is applicable to "single phase non-residential service at secondary voltage and *other applications outside the scope of the Residential Rate Schedule*." *Id.* at 37 (emphasis in original). In support of its determination, the PUC noted that Moyer offered no evidence to refute PPL's evidence that, in order to provide service to his solar facility, PPL had to perform one standard transformation to step down the distribution line's voltage from 240 volts to 120 volts at the point of delivery. *Id.* Accordingly, mindful that a public utility's tariff has the force and effect of law and is binding on both the customer and the utility,[10] we conclude that the PUC did not err in determining that PPL properly assigned a commercial rate to Moyer's host account. *See PPL Elec. Util. Corp.*, 912 A.2d at 400 (holding that the PUC is responsible for regulating utility rates and evaluating tariffs over which it has the particular expertise).

For the above reasons, therefore, we grant the PUC's application to strike the purported *amicus curiae* brief, deny both of Moyer's applications for relief, and affirm the PUC's final order on the merits.

---

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[10] *PECO Energy Co. v. Twp. of Upper Dublin*, 922 A.2d 996, 1004 (Pa. Cmwlth. 2007).

14

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Jay Larry Moyer,               :
                    Petitioner :
                               :
          v.                   :    No. 882 C.D. 2016
                               :
Public Utility Commission,     :
                    Respondent :

## O R D E R

AND NOW, this 13th day of March, 2017, the order of the Public Utility Commission is hereby AFFIRMED. Further, Respondent's application to strike the purported *amicus curiae* brief filed by Sunrise Energy, LLC, is hereby GRANTED. Finally, both Petitioner's applications for relief, filed October 20, 2016, and November 23, 2016, are hereby DENIED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge